LATHAM & WATKINS LLP
Patrick E. Gibbs (Bar No. 183174)
*patrick.gibbs@lw.com*
Allison S. Davidson (Bar No. 267964)
*allison.davidson@lw.com*
140 Scott Drive
Menlo Park, California 94025
Telephone: 650.328.4600
Facsimile: 650.463.2600

Attorneys for Defendants
Credit Suisse International and
Credit Suisse Securities (USA) LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

WILLARD A. SHARRETTE, DAVID GOLDMAN, and ESTA GOLDMAN, Individually and on Behalf of All Others Similarly Situation,

Plaintiffs,

v.

CREDIT SUISSE INTERNATIONAL, a foreign company, CREDIT SUISSE SECURITIES (USA) LLC, a Delaware limited liability company, and DOES 1-100,

Defendants.

CASE NO. 4:13-cv-02783-SBA

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Trial Date: None Set

Date: July 15, 2014
Time: 1:00 p.m.
Judge: Hon. Saundra Brown Armstrong
Courtroom: 1, 4th Floor

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. ECD and Its 2008 Offerings ........ 2

B. ECD Warns Investors Of The Risks Associated With Its Securities ........ 3

C. ECD'S Business Continues To Decline Following The Offerings ........ 4

D. The Alleged Market Manipulation ........ 4

III. ARGUMENT ........ 5

A. Plaintiffs' Complaint Fails To Satisfy The Requirements of *Twombly*, Fed. R. Civ. Proc. 9(b) And The PSLRA, And Should Be Dismissed On That Basis ........ 5

B. Plaintiffs Fail To State A Claim Under Section 10(b) or Section 9 ........ 6

1. Plaintiffs Have Not Adequately Alleged Market Manipulation By Credit Suisse ........ 6

a. Plaintiffs Have Failed To Allege Any Facts Supporting An Inference of Market Manipulation In ECD Stock ........ 6

b. Plaintiffs Have Failed To Allege Any Facts Supporting An Inference That Credit Suisse Participated In Any Market Manipulation Of ECD Stock ........ 9

2. Plaintiffs Have Failed To Allege That Credit Suisse Made Any Misleading Statements ........ 10

3. Plaintiffs Have Failed To Allege Scienter ........ 12

4. Plaintiffs Fail To Allege That Credit Suisse Caused Plaintiffs' Damages ........ 13

IV. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ........ 5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ........ passim

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 5, 8, 10

*Citibank N.A. v. K-H Corp.*, 968 F.2d 1489 (2d Cir. 1992) ........ 14

*Cohen v. Stevanovich*, 722 F. Supp. 2d 416 (S.D.N.Y. 2010) ........ passim

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997) ........ 9

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) ........ 6, 14

*Ernst & Ernst v. Hochfelder*, 425 U.S. at 194 (1976) ........ 12

*In re Brocade Commc'ns Sys. Derivative Litig.*, 615 F. Supp. 2d 1018 (N.D. Cal. 2009) ........ 6, 9, 10

*In re Coinstar Inc. Sec. Litig.*, 2011 WL 4712206 (W.D. Wash. Oct. 6, 2011) ........ 11, 12

*In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006 (9th Cir. 2005) ........ 6, 13, 14

*In re Dot Hill Sys. Corp. Sec. Litig.*, 594 F. Supp. 2d 1150 (S.D. Cal. 2008) ........ 13

*In re Peerless Sys. Corp. Sec. Litig.*, 182 F. Supp. 2d 982 (S.D. Cal. 2002) ........ 13

*In re Remec, Inc. Sec. Litig.*, 415 F. Supp. 2d 1106 (S.D. Cal. 2006) ........ 12

*In re The Vantive Corp.*, 283 F.3d 1079 (9th Cir. 2002) ........ 6

*Janus Capital Grp., Inc. v. First Derivative Traders*,
131 S. Ct. 2296 (2011) ........................................ 11, 12

*Lentell v. Merrill Lynch & Co. Inc.*,
396 F.3d 161 (2d. Cir. 2005) ........................................ 15

*Lifschitz v. NextWave Wireless, Inc.*,
No. 08-CV-1697, 2011 WL 940918 (S.D. Cal. Mar. 16, 2011) ........................................ 12

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) ........................................ 12

*Metzler Inv. GMBH v. Corinthian Colls, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ........................................ 15

*Ronconi v. Larkin*,
253 F.3d. 423 (9th Cir. 2001) ........................................ 12

*SEC v. Fraser*,
2010 U.S. Dist. LEXIS 7038 (D. Ariz. Jan. 28, 2010) ........................................ 9

*Stark Trading & Shepherd Invs. Int'l., Ltd.*,
2008 U.S. Dist. LEXIS 2677 ........................................ 9

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
552 U.S. 148, 128 S. Ct. 761, 169 L. Ed. 2d 627 (2008) ........................................ 9

*Sullivan & Long v. Scattered Corp.*,
47 F.3d 857 (7th Cir. 1995) ........................................ 3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ........................................ 6, 12

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003) ........................................ 11

*Weiss v. Amkor Tech., Inc.*,
527 F. Supp. 2d 938 (D. Ariz. 2007) ........................................ 14

*Westley v. Oclaro, Inc.*,
897 F. Supp. 2d 902 (N.D. Cal. 2012) ........................................ 13

## STATUTES

15 U.S.C. § 78u-4(b)(1) ........................................ 6

## OTHER AUTHORITIES

Thoma, Beat, "Convertible Bonds – Strategies and Concepts," Fisch Asset Management (2013) ........................................ 8

**RULES**

Fed. R. Civ. Proc. 9(b) ........ 6

**REGULATIONS**

17 C.F.R. § 240.9 ........ 2, 5

17 C.F.R. § 240.10(b) ........ 2, 5, 10, 12

17 C.F.R. § 240.10b–5(b) ........ 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iv

DEFENDANTS' MOTION TO DISMISS
AMENDED COMPLAINT
No. 4:13-cv-02783-SBA

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on July 15, 2014, at 1:00 p.m. before the Honorable Saundra Brown Armstrong, United States District Judge, located at the Ronald V. Dellums Federal Building and U.S. Courthouse, 1301 Clay Street, Oakland, California 94612, Courtroom 1-4th Floor, Defendants Credit Suisse International and Credit Suisse Securities (USA) LLC will, and hereby, do move the Court for an Order dismissing the Consolidated Amended Complaint (the "Complaint") filed by lead plaintiffs Willard A. Sharrette, David Goldman and Esta Goldman ("Plaintiffs"). This Motion is made pursuant to: (1) Federal Rules of Civil Procedure 12(b)(6), 9(b), and 8(a); and (2) the Private Securities Litigation Reform Act of 1995 ("PSLRA") on the grounds that the Amended Complaint fails to state a claim for violations of Sections 10(b) and 9 of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.

The Motion is based on this Notice, the Memorandum of Points and Authorities, the Defendants' Request for Judicial Notice, and the exhibits attached thereto, the Complaint, the Court's record in this matter, and the arguments of counsel.

## RELIEF SOUGHT

Defendants seek an order dismissing Plaintiffs' Complaint with prejudice for failure to state a claim, and failure to meet the heightened pleading standards under the PSLRA.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs' claims against Credit Suisse International and Credit Suisse Securities (USA) LLC (collectively, "Credit Suisse") should be dismissed for failure to state a claim. Plaintiffs are three former shareholders of Energy Conversion Devices ("ECD") who claim that ECD, which filed for bankruptcy in February 2012, was destroyed by a massive short selling scheme perpetrated by an unnamed group of "predatory hedge funds". But instead of suing the hedge funds that allegedly caused ECD's demise, Plaintiffs have sued Credit Suisse, which helped ECD raise approximately $401.6 million worth of capital in June of 2008. But Plaintiffs have alleged no facts that would support a recovery against Credit Suisse.

Plaintiffs' claims against Credit Suisse – for market manipulation under Sections 9 and 10(b) of the Securities Exchange Act and for false or misleading statements under Section 10(b) of the Exchange Act – arise out of a combined offering of convertible notes and common stock by ECD, underwritten by Credit Suisse Securities, in June of 2008. As part of that offering, some of the shares issued in the common stock offering were sold to the public, while others were made available to Credit Suisse International to enable short sales of ECD's stock as a hedging strategy for investors in the Convertible Notes. All of this was fully disclosed to ECD's investors in the offering documents, and ECD specifically warned investors that the offering of 2,723,300 shares into the market, and the expected short sales of 721,975 shares of ECD's stock following the offerings, could cause the price of ECD's stock to decline. According to Plaintiffs, however, short sales following the offering exceeded what Plaintiffs would expect as part of a "legitimate" hedging strategy. From this, Plaintiffs assume that the "excess" short selling must have been part of a scheme to drive down the price of ECD's stock, and they further assume that Credit Suisse must have been aware of and participated in this scheme. But none of these key conclusions – which are essential to Plaintiffs' claims under Sections 9 and 10(b) of the Exchange Act – are supported by any factual allegations at all. Instead, they rest on nothing more than speculation and bare conclusions.

In short, the Complaint fails to state a claim against Credit Suisse under Sections 9 or 10(b) because (1) Plaintiffs have failed to allege any market manipulation or false statements by Credit Suisse or anyone else; (2) Plaintiffs have failed to allege facts supporting a "strong inference" that Credit Suisse acted with "scienter"; and (3) Plaintiffs have failed to allege facts supporting a plausible theory of loss causation. The Complaint should be dismissed.

## II. BACKGROUND[1]

### A. ECD and Its 2008 Offerings

ECD was a solar panel manufacturer whose stock traded on NASDAQ from March 1993

---

[1] This factual background is based upon the allegations in the Complaint and documents subject to judicial notice. *See* Request for Judicial Notice filed concurrently herewith. The exhibits cited as "Ex." refer to exhibits attached to the accompanying Declaration of Allison S. Davidson filed contemporaneously herewith.

to March 2012. In June 2008, ECD completed two public securities offerings: one for ECD common stock and one for convertible notes. Compl. ¶¶ 3, 122. Both offerings were underwritten by Credit Suisse Securities. Compl. ¶ 3; Ex. 2 at 1; Ex. 1 at 2. Through the Convertible Notes Offering, ECD offered $316 million in notes that were convertible into common stock. Through the Stock Offering, ECD offered 4,719,974 shares of common stock, 1,270,000 of which were offered to the public. ECD expected to raise another $85.6 million in capital through the Stock Offering (on top of the $316 million it raised through the Convertible Notes Offering), which it intended to use, among other general corporate expenses, to expand its production capacity. Ex. 2 at 1, S-7. The remaining 3,444,975 shares of common stock were made available to Credit Suisse International (through Credit Suisse Securities) to borrow pursuant to a Share Lending Agreement. *Id.* at 1.

**B. ECD Warns Investors Of The Risks Associated With Its Securities**

ECD filed a separate prospectus supplement for each of the Stock Offering and the Convertible Notes Offering (collectively, the "Prospectuses"). *See* Exs. 1-2. In each Prospectus, ECD disclosed that Credit Suisse International would be using the borrowed shares to facilitate the establishment of short positions and short sales in ECD stock.[2] Ex. 2 at S-326; Ex. 1 at S-6. As the Prospectuses explained, Credit Suisse International would initially use 2,723,300 of the 3,444,975 borrowed shares to facilitate privately negotiated transactions or short sales, but expected to use the remaining shares in the future to facilitate similar transactions. Ex. 2 at S-36. ECD warned investors that the increase in the number of outstanding shares of its common stock under the Share Lending Agreement could have a negative effect on the market price of its common stock, and that the market price of ECD's common stock could be further negatively affected by short sales of its common stock. Ex. 2 at S-22; 1 at S-13 – S-28. The Prospectuses also disclosed a number of risks arising from ECD's business model, including an "intensely

---

[2] A short sale is a trade in which the short seller profits if the share price declines. The short seller borrows the stock and agrees to return it at a future date. The short seller then sells the borrowed stock at the current market price. If the price of the stock drops, then the short seller can cover the trade by buying stock at the new, lower price before the delivery date, and keep the difference as profit. It is, in effect, a bet that the stock price will drop before the delivery date. *See, e.g., Sullivan & Long v. Scattered Corp.*, 47 F.3d 857, 859 (7th Cir. 1995); *ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 96, n.1 (2d Cir. 2007).

competitive and rapid evolving" solar energy market (Ex. 2 at S-10) and the fact that its business required significant capital expenditures, that only continued to grow over time. *Id.* at S-9, S-11. Indeed, by the time of the Offerings, ECD had incurred significant net loss, and by March 31, 2008, ECD had an accumulated deficit of $335 million. *Id.* at S-9.

**C. ECD'S Business Continues To Decline Following The Offerings**

Following the Offerings, ECD announced a series of dramatic declines in its business. In 2010 and 2011, ECD's reported revenue was $61.9 million and $22 million *less* than in the preceding years, respectively. Ex. 5; Ex. 7. In February 2012, ECD filed for bankruptcy because its "current financial position [was] insufficient to sustain the current operating environment and make the necessary investments for the future of the business". Ex. 8. ECD blamed its declining financial health on "existing global financial constraints" (Ex. 3), and the "global economic crisis" and its adverse impact on credit availability. Exs. 4, 6.

**D. The Alleged Market Manipulation**

The Complaint alleges that ECD's decline was caused not by the factors cited by ECD, but instead by a coordinated scheme by a group of unnamed "predatory hedge funds" to drive down the price of ECD's common stock through massive short sales. Compl. ¶ 5. Plaintiffs claim that, by driving down ECD's stock price, this "financing scheme" made it impossible for ECD to raise capital for its business, and thereby doomed the company. At the same time, Plaintiffs appear to claim that ECD's stock was temporarily inflated by false and misleading statements in the Prospectuses, which failed to disclose the existence of the "financing scheme". Compl. ¶¶ 2,4-9, 38-39.

As Plaintiffs concede, however, "short selling" can be a legitimate hedge in convertible notes offerings such as the one at issue. *Id.* at ¶¶ 4-6, 26. Investors will sometimes "hedge" their investments in convertible notes and limit the downside risk in the price of the notes by shorting the common stock of the company. *Id.* at 4. This creates a "market neutral position" for the investor, in the event that the equity price of the underlying stock decreases below the note conversion price. *Id.* at ¶ 26. Plaintiffs concede, in other words, that there is nothing improper or manipulative about short sales. Instead, Plaintiffs' "manipulation" claim rests entirely on the

total volume of short sales after the offering. Because that volume exceeded what Plaintiffs claim is "necessary to any legitimate hedging strategy", Plaintiffs claim that the unnamed hedge funds engaged in something other than "legitimate" hedging (*id*. ¶¶ 28, 43-45), and then leap directly to the conclusion that the alleged excess volume of short sales could only be the result of a fraudulent scheme to manipulate the price of ECD's stock. *Id*. at ¶¶ 43, 46-47. But Plaintiffs also concede, as they must, that the Prospectuses disclosed the number of shares that would be loaned to Credit Suisse International for this purpose, and Plaintiffs do not claim that Credit Suisse International exceeded that number. *Id*. ¶ 42. Moreover, without alleging any specific facts about any agreements or understandings between Credit Suisse and any of the "predatory hedge funds" who actually carried out the alleged short sales, Plaintiffs claim that Credit Suisse was a knowing participant in this short selling scheme based solely on the fact that Credit Suisse Securities underwrote the Offerings, and Credit Suisse International borrowed shares of ECD stock in order to make them available for short sales. Compl. ¶¶ 8, 28-29.

## III. ARGUMENT

### A. Plaintiffs' Complaint Fails To Satisfy The Requirements of *Twombly,* Fed. R. Civ. Proc. 9(b) And The PSLRA, And Should Be Dismissed On That Basis

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). To that end, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"). *Twombly*, 550 U.S. at 555. This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

Here, Plaintiffs seek to hold Credit Suisse liable for market manipulation under Section 10(b) and Section 9 of the Exchange Act, as well as for false or misleading statements under Section 10(b). Each of these claims triggers heightened pleading burdens under Fed. R. Civ.

Proc. 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). Specifically, Rule 9(b) requires plaintiffs to state "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under the PSLRA, "a manipulation complaint must plead with particularity the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants" (*ATSI*, 493 F.3d at 102), while a false statement complaint must specify with particularity "each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) ; *see also* 15 U.S.C. § 78u-4(b)(1) . In addition, under either theory, Plaintiffs are required to allege with particularity "the facts evidencing scienter, i.e., the defendant's intention 'to deceive, manipulate, or defraud.'" *In re The Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084-85 (9th Cir. 2002) ; *ATSI*, 493 F.3d at 102. Finally, under either theory, Plaintiffs must allege loss causation, which requires Plaintiffs to plead a causal connection between the deceptive acts that form the basis for the securities fraud claim and the injury suffered by the plaintiff. *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1025 (9th Cir. 2005) ; *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005); *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 430 (S.D.N.Y. 2010) . Here, Plaintiffs' Complaint fails to state a claim for relief because (1) Plaintiffs have failed to allege that Credit Suisse engaged in any market manipulation or made a false or misleading statement; (2) Plaintiffs have failed to allege that Credit Suisse acted with scienter; and (3) Plaintiffs have failed to allege loss causation.

### B. Plaintiffs Fail To State A Claim Under Section 10(b) or Section 9

#### 1. Plaintiffs Have Not Adequately Alleged Market Manipulation By Credit Suisse

##### a. Plaintiffs Have Failed To Allege Any Facts Supporting An Inference of Market Manipulation In ECD Stock

Pleading market manipulation requires more than a general allegation of a "scheme", or a transaction or transactions that caused a company's stock price to decline. *In re Brocade Commc'ns Sys. Derivative Litig.*, 615 F. Supp. 2d 1018, 1044 (N.D. Cal. 2009) ; *Cohen*, 722 F. Supp. 2d at 424 (*citing ATSI*, 493 F.3d at 102) ("[g]eneral allegations not tied to the defendants or resting upon speculation are insufficient" to prove liability under a market manipulation

theory). To allege market manipulation, Plaintiffs must identify some kind of market conduct that caused the stock to trade at prices that reflect something other than the transaction parties' honestly held views about the value of the stock. *ATSI*, 493 F.3d at 101. In that regard, courts have recognized that there is nothing "manipulative" about short selling, even in large volumes. *Id*. at 103. Indeed, shorting often has beneficial effects: "[a]side from providing market liquidity, short selling enhances pricing efficiency by helping to move the prices of overvalued securities toward their intrinsic values." *Id*.

*ATSI Commc'ns., Inc. v. Shaar Fund, Ltd*. is instructive on this point. In *ATSI*, the plaintiff claimed that defendants manipulated the market for ATSI's common stock by engaging in massive short sales to drive down its price. *Id*. at 96-97. According to the plaintiff, the defendants used convertible securities as a hedge against the risk of loss in the short sales, which resulted in a further decline in ATSI's stock price. *Id*. In support of this claim, the plaintiff pointed to the "magnitude and timing of changes in [ATSI's] stock price and trading volume", noting massive stock sales and large price declines that plaintiff claimed "could only have resulted from sales by" certain of the defendants. *Id*. at 97. Affirming the district court's dismissal of these claims, the Court of Appeal held that allegations of massive short selling did not state a claim for market manipulation when plaintiffs failed to allege facts showing that the short selling at issue "create[d] a false impression of how market participants value a security." *Id*. at 101.

Among other things, the court noted that allegations of market manipulation based on "high-volume selling of ATSI's stock with coinciding drops in the stock price" and "trading patterns" were "speculative inferences" at best, which were insufficient to state a claim. *Id*. at 102-03. More specifically, the court held that these allegations were insufficient because plaintiff "fail[ed] to state even roughly how many shares the defendants sold, when they sold them, and why those sales caused the precipitous drop in stock price." *Id*. at 103. Finally, the court rejected plaintiff's allegation that the only plausible explanation for an allegedly excess trading volume was "manipulative trading", noting that such an inference is "too speculative" where plaintiff failed to "particularly allege what the defendants did – beyond simply mentioning

common types of manipulative activity – or state how this activity affected the market in ATSI's stock". *Id*. at 104.

Plaintiffs' Complaint here fails for the same reason: Plaintiffs have alleged no facts suggesting that the short sales following the Offerings reflected anything other than market participants' honestly held views about the value of ECD's stock. In other words, Plaintiffs have alleged no facts supporting a plausible inference that the short sales after the Offering were part of a scheme to manipulate the price of ECD's stock, rather than bets placed by investors who expected ECD's stock price to fall. Plaintiffs' Complaint hinges entirely on the fact that the volume of short sales after the Offerings exceeded what Plaintiffs' claim was "necessary" for "legitimate" hedging activity. Compl. ¶¶ 26-27, 42-44.[3] But as courts have recognized, allegations that short sale activities varied from typical patterns "does not transform that legitimate sale into unlawful market manipulation." *Cohen*, 722 F. Supp. at 424.

Indeed, Plaintiffs' Complaint assumes that any short sales beyond what Plaintiffs claim was necessary for "legitimate" hedging must have been market manipulation. But Plaintiffs' logical leap from "excess" short sales to "market manipulation" is sheer speculation, nowhere near enough to survive a motion to dismiss. *ATSI*, 493 F.3d at 100, 103-04; *see also Cohen*, 722 F. Supp. 2d at 432 ("Plaintiffs [allegations, which] fail to allege even the most basic details of the [defendants] purported illegal short selling of [the company's] stock…are precisely the type of groundless claims that *Twombly* prohibits"). Plaintiffs allege no facts to suggest that the increase in short sales reflected anything other than the market's collective view that ECD's stock price was likely to drop in the future. In fact, Plaintiffs concede that investors had shorted ECD's stock even before the Offerings (Compl. at ¶¶ 42, 45), and after the Offerings, ECD announced a series of sharp declines in its business. *See supra* at II.C. Against that background, the mere fact

---

[3] Plaintiffs sole basis for assuming what the "appropriate number of shares necessary" to engage in "legitimate hedging" appears to be Thoma, Beat, "Convertible Bonds – Strategies and Concepts," Fisch Asset Management (2013) , which is a knowledge-based document prepared by an asset management firm located in Switzerland, and serving primarily clients in the German-speaking region of Europe. *See* http://www.fam.ch/en/company.html (Fisch Asset Management website). Why, or how, this European-based asset management firm serves as any authority whatsoever for what a "legitimate hedging" strategy would be is a mystery – that is unexplained by Plaintiffs conclusory allegations on such. *See* Compl. ¶ 26.

that short sales increased does not come close to supporting a reasonable inference of market manipulation.

Simply put, Plaintiffs' allegation that the volume of short sales exceeded what Plaintiffs claim was necessary for any "legitimate" hedging is nowhere near sufficient to state a claim for market manipulation. *ATSI*, 493 F.3d at 103 (rejecting allegations of improper short selling based on high volumes because plaintiff "fail[ed] to state even roughly how many shares the defendants sold, when they sold them, and why *those* sales caused the precipitous drop in stock price") (emphasis added); *Cohen*, 722 F. Supp. at 424 (rejecting "broad and conclusory" allegations of market manipulation based on short selling where complaint was void of allegations showing that the "parties to the alleged short sales were anything other than bona fide buyers and sellers.").

**b. Plaintiffs Have Failed To Allege Any Facts Supporting An Inference That Credit Suisse Participated In Any Market Manipulation Of ECD Stock**

Even setting aside Plaintiffs' failure to allege market manipulation of ECD's stock at all, Plaintiffs have alleged no facts suggesting that Credit Suisse actually participated in any alleged market manipulation. To state a claim against Credit Suisse under this theory, Plaintiffs must allege that Credit Suisse "committed a manipulative or deceptive act in furtherance of the scheme." *SEC v. Fraser*, No. CV-09-00443-PHX-GMS, 2010 U.S. Dist. LEXIS 7038, *23 (D. Ariz. Jan. 28, 2010) (citing *Cooper v. Pickett*, 137 F.3d 616, 624 (9th Cir. 1997) ). "It is not enough that a transaction in which a defendant was involved had a deceptive purpose and effect; rather, the defendant's *own conduct* contributing to the transaction or overall scheme must have had a deceptive purpose and effect." *Id.* at 23-24*; see also Stark Trading & Shepherd Invs. Int'l., Ltd.*, No. 05-C-1167, 2008 U.S. Dist. LEXIS 2677, *43, *45-46 (dismissing plaintiff's section 9(a) claims, and noting that "Section 9(a) does not prohibit transactions simply because they raise or lower a security's sale price"). In other words, Plaintiffs "must show more than a generalized scheme of misconduct." *In re Brocade Commc'ns Sys. Derivative Litig.*, 615 F. Supp. 2d at 1044 (*citing Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008)).

Plaintiffs have not alleged any facts supporting a plausible inference that Credit Suisse committed a manipulative or deceptive act. Plaintiffs do not actually say who engaged in any "manipulative" short sales (as opposed to any "legitimate" hedging or other legitimate short sales) , nor do Plaintiffs allege any facts showing that Credit Suisse actually provided shares to any of the "predatory hedge funds" who are said to have perpetrated the coordinated short sale attack on ECD. In fact, based on the allegations in the Complaint, there is no basis to infer that Credit Suisse did anything other than what the Prospectuses said Credit Suisse would do. That can hardly be deemed a "manipulative" or "deceptive" act in furtherance of some "scheme" to drive down the price of ECD's stock. *See, e.g., In re Brocade* at 1044.[4]

Having failed to allege that Credit Suisse engaged in any manipulative or deceptive act, Plaintiffs have failed to state a claim for market manipulation against Credit Suisse. *See Twombly*, 550 U.S. at 555 (speculative allegations are insufficient to state a claim).

**2. Plaintiffs Have Failed To Allege That Credit Suisse Made Any Misleading Statements**

To the extent Plaintiffs' 10(b) allegations rely on alleged misstatements in the Prospectuses, Plaintiffs' claim fails because Plaintiffs have failed to sufficiently allege that any of the statements in ECD's Prospectuses were false or misleading. The only "false" statements Plaintiffs identify is language stating that Credit Suisse would use the borrowed shares to facilitate privately negotiated transactions or short sales by which investors could hedge their investments in the Convertible Notes. Compl. ¶¶ 38-39. But as discussed above, the Complaint does not allege facts demonstrating that any statements regarding the purpose of the borrowed shares were objectively false when made, or even false at all.

Indeed, Plaintiffs do not actually deny that Credit Suisse used borrowed shares to facilitate privately negotiated transactions or short sales by which investors could hedge their

[4] Although Plaintiffs claim that the real purpose of the Offerings was to enable short sellers to hedge their short sales through the Convertible Notes (rather than enabling investors to use short sales as a hedge against investments in the Convertible Notes), this is nothing more than a bare conclusion – speculation that is wholly unsupported by any factual allegations. See *Cohen*, 722 F. Supp. 2d at 422 (rejecting market manipulation claims where, among other things, "Plaintiffs allege no facts to support their conclusory assertions" regarding defendants' alleged scheme; "broad and conclusory allegations of naked short selling do not state a claim for market manipulation"). *Id.* at 424.

investments in the Convertible Notes. In fact, Plaintiffs allegations indicate just the opposite: as Plaintiffs admits, "[a] review of [ECD's] 13F filings reveals that some of the investors in the Convertible Notes were small investors or companies that would not have participated in the aggressive manipulation described herein." Compl. ¶ 44. There are no allegations that these same "small investors or companies" did not also borrow shares from Credit Suisse for the precise reason of hedging their investment in the Convertible Notes.

Instead of pleading facts contradicting the disclosures in the Prospectuses, Plaintiffs assert a series of bald conclusions based on their self-serving characterizations of how a hedging process "should" work. Compl. ¶¶ 23-36, 40. Based on these conclusion, Plaintiffs then jump to the conclusion that Credit Suisse knew that the hedge funds would not be engaging in a "legitimate hedging strategy" (according to Plaintiffs), thus rendering the Prospectuses' statements false. *Id*. ¶¶ 40-41. This series of conclusions is not sufficiently particularized and fails to show that the challenged statements were materially false or misleading when made. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations.") (internal quotation marks, citations, and alterations omitted).

Even assuming *arguendo* that false statements were made in the Prospectuses (which they were not), there is no basis for holding Credit Suisse liable for any such statements because Plaintiffs have failed to allege that Credit Suisse "made" the challenged statements. *See* 17 CFR § 240.10b–5(b); *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2301 (2011) ; *In re Coinstar Inc. Sec. Litig.*, No. C11-133 MJP, 2011 WL 4712206, *10 (W.D. Wash. Oct. 6, 2011) .

The Supreme Court has narrowly defined the term "make" to apply to only the "entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Grp*., 131 S.Ct. at 2302. "Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right. One who prepares or

publishes a statement on behalf of another is not its maker." *Id*. The Supreme Court explicitly rejected a definition of "make" that would "permit private plaintiffs to sue a person who 'provides the false or misleading information that another person then puts into the statement.'" *Id*. at 2303. Here, Plaintiffs allege no facts showing that Credit Suisse had control over the statements in the Prospectuses. Accordingly, the Section 10(b) claim should be dismissed. *See Janus Capital Grp*., 131 S.C.t. at 2301; *In re Coinstar Inc. Sec. Litig*., 2011 WL 4712206, *10.

**3. Plaintiffs Have Failed To Allege Scienter**

In addition to alleging a manipulative act or material misrepresentation, Plaintiff "must plead with particularly facts giving rise to a strong inference that the defendant intended to deceive investors by artificially affecting the market price of securities." *ATSI*, 493 F.3d at 102; *see also Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 & n.12 (1976) . The "inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. Here, Plaintiff fails to meet this standard.

First, Plaintiffs assert that Credit Suisse was aware of the hedge funds' intentions with regard to making "huge bets against ECD stock" based on "solicitation conversations" that allegedly occurred with the hedge funds prior to the Offerings. *Id*. Compl. ¶¶ 40-41 (referring to the Stock Offering Prospectus). These allegations – which do not include any information about these conversations at all – are far too vague to create a strong inference (or any inference) of scienter. *In re Remec, Inc. Sec. Litig.*, 415 F. Supp. 2d 1106, 1116 (S.D. Cal. 2006) (boilerplate allegations that defendants "knew" or "were aware of" are "generalities [that lack] the specificity required to show a strong inference of scienter").[5] The Complaint does not identify any parties to these conversations, does not say when or where these conversations took place, and, most importantly, does not say what was discussed during these conversations. Indeed, the Stock

[5] *See, e.g.*, *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) (failure to plead scienter where "plaintiffs merely assert in conclusory terms that the defendants had access to internal data demonstrating a decline in sales"); *Ronconi v. Larkin*, 253 F.3d. 423, 430 n.12 (9th Cir. 2001) ; *Lifschitz v. NextWave Wireless, Inc.*, No. 08-CV-1697, 2011 WL 940918, at *3 (S.D. Cal. Mar. 16, 2011) (scienter not pled when plaintiff "offers a series of unsupported allegations that [defendants] knew [the alleged statements] were false").

Offering Prospectus – on which these allegations are based – does not reference conversations with hedge funds at all. Plaintiffs' speculation about these solicitation discussions does not come close to supporting a strong inference of scienter. *See In re Dot Hill Sys. Corp. Sec. Litig.*, 594 F. Supp. 2d 1150, 1159 (S.D. Cal. 2008) (plaintiff did not plead scienter absent non-speculative, specific facts establishing that defendants knew of [certain facts] at time of alleged misstatement); *In re Peerless Sys. Corp. Sec. Litig.*, 182 F. Supp. 2d 982, 994 (S.D. Cal. 2002) (rejecting scienter allegations where there were "no allegations identifying specific conversations…where [defendants] purportedly learned of the true…information").

Second, Plaintiffs' bald assertion that Credit Suisse "knew" of the hedge funds' plan to "engage in rampant short selling of ECD stock" (Compl. ¶¶ 8, 26-28, 31-35, 40-43) because of the high volume of short sales that followed the Offerings is not only unsupported (*see supra* at III.B.1.a), but also wholly insufficient to support a strong inference of scienter. *ATSI*, 493 F.3d at 104 ("A strong inference of scienter is not raised by alleging that a legitimate investment vehicle, such as the convertible preferred stock at issue here, creates an opportunity for profit through manipulation"). Again, Plaintiff does not say which of the "excess" short sales involved shares obtained through Credit Suisse.

Finally, Plaintiffs' allegations that Credit Suisse was motivated by a desire to enhance its brand image with hedge funds, or to earn fees from the Offerings, fail because (i) motive alone can never support a strong inference of scienter (*Westley v. Oclaro, Inc.*, 897 F. Supp. 2d 902, 926 (N.D. Cal. 2012), and (ii) general business motives such as these, shared by all businesses, do not support a strong inference of scienter. *Id*. at 926; *Cohen*, 722 F. Supp. 2d at 428-29.

In short, Plaintiffs fail to allege with particularity facts giving rise to a strong inference that Credit Suisse acted with scienter.

**4. Plaintiffs Fail To Allege That Credit Suisse Caused Plaintiffs' Damages**

Plaintiffs' claims against Credit Suisse also fail because the Complaint does not allege loss causation. Under either of Plaintiffs' theories, Plaintiff must alleged that Credit Suisse's conduct caused Plaintiffs' loss. *See In re Daou Sys. Inc. Sec. Litig.*, 411 F.3d at 1025. In false

statement cases, this typically requires allegations that the stock price dropped when the market learned the "truth." *Daou*, at 1025; *see also Dura*, 544 U.S. at 347. In manipulation cases, Plaintiffs must adequately allege a causal connection between the alleged "manipulation" and the alleged loss. *Cohen*, 722 F. Supp. 2d at 430. Plaintiffs' Complaint does not meet either standard.

Plaintiffs claim that the so-called financing scheme resulted in (1) the decline in ECD's share price, impairing its access to capital and its ability to run its business; and (2) ECD's ultimate bankruptcy. Compl. ¶¶ 46-47. But as discussed above, Plaintiffs have failed to link any conduct *on the part of Credit Suisse* to the decline in ECD's share price, or to ECD's bankruptcy, which occurred *four years* after the Offerings. *See supra* at III.B.1.b. The Complaint alleges only that Credit Suisse Securities underwrote the Offerings (which, of course, enabled ECD to raise over $401.6 million in capital), and Credit Suisse International made certain shares available for short sales – conduct that Plaintiffs concede is not inherently manipulative or improper. Absent allegations linking "fraudulent conduct" on the part of Credit Suisse to Plaintiffs' losses (as opposed to blaming Plaintiffs' losses on massive "short selling" by unidentified traders, using shares that Plaintiffs have made no effort to link to Credit Suisse), Plaintiffs have failed to adequately allege loss causation. *Citibank N.A. v. K-H Corp.*, 968 F.2d 1489, 1497 (2d Cir. 1992) (holding that the complaint failed to allege loss causation where it only alleged "in a conclusory fashion…that 'there [was] a direct causal link between defendants' fraud and [plaintiff's] losses"); *Cohen*, 722 F. Supp. 2d at 431 (noting that the complaint "fails to allege any facts supporting Plaintiffs' contention that the [defendants'] purported misconduct caused any so-called losses by Plaintiffs", and holding plaintiffs' claims did not satisfy the loss causation requirement where plaintiff "failed to allege even the most basic details" of the defendants' alleged wrongdoing, because "[s]uch allegations are precisely the type of groundless claims that *Twombly* prohibits."); *see also Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 947-948 (D. Ariz. 2007) ("courts since *Dura* routinely reject complaints that fail to allege facts that, if established, demonstrate the critical link between the misrepresentations or omissions and the investor's loss.").

Moreover, with regard to Plaintiffs' false statement claims, "the complaint must allege that the practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses." *Metzler Inv. GMBH v. Corinthian Colls, Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008) . Plaintiffs make no attempt to do so here – and indeed, Plaintiffs fail to point to any revelations to the market regarding the alleged fraudulent conduct at all.[6] Instead, Plaintiffs make conclusory statements regarding ECD's stock declining because of the allegedly fraudulent conduct, but this is insufficient. *Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 175 (2d. Cir. 2005) (rejecting plaintiffs' allegations that "when they invested, they were relying on the integrity of the market (including the fraudulent recommendations and omissions made by Merrill Lynch during the putative class periods), that the shares plummeted, and that their investments became virtually worthless" because "[t]here is no allegation that the market reacted negatively to a corrective disclosure regarding the falsity of Merrill's…recommendations and no allegation that Merrill misstated or omitted risks that did lead to the loss").

## IV. CONCLUSION

For the reasons above, the Defendants respectfully request that the Complaint be dismissed.

Dated: April 4, 2014

Respectfully submitted,

LATHAM & WATKINS LLP
Patrick E. Gibbs
Allison S. Davidson

By /s/ Patrick E. Gibbs
Patrick. E. Gibbs
Attorneys for Defendants
CREDIT SUISSE INTERNATIONAL AND CREDIT SUISSE SECURITIES (USA) LLC

---

[6] Plaintiffs' allegation that it was "later revealed in ECD's bankruptcy filing [that] Credit Suisse lent almost all of [the borrowed shares] out for short sales" is not only vague as to whether Plaintiffs are attempting to plead that this filing "revealed" the fraudulent scheme, but is also outside of the relevant time period. According to Plaintiffs, the alleged financing scheme caused their losses because it resulted in ECD's stock decline, and ultimate bankruptcy. Accordingly, by the time of the bankruptcy filing, Plaintiffs' alleged loss had already occurred.