

**Thomas L. Laughlin, IV**

Writer's Direct Dial Number
(646) 571-0609

Writer's Direct Email Address
tlaughlin@scott-scott.com

October 7, 2016

<u>**VIA ECF**</u>

Hon. Sarah Netburn
United States Magistrate Judge
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *ECD Investor Group, et al. v. Credit Suisse International, et al.*,
               No. 1:14-cv-08486 (VM)(SN) (S.D.N.Y)

Dear Magistrate Judge Netburn:

      We represent Plaintiffs Johnathan Sharrette (appointed Personal Representative of the Estate of deceased Lead Plaintiff Willard A. Sharrette), David Goldman, and Esta Goldman (collectively, "Plaintiffs") in the above-referenced action. We write to request a prehearing conference on this letter motion seeking an order (i) granting Plaintiffs leave to take additional depositions, and (ii) extending the time to take fact depositions to December 31, 2016.

      Plaintiffs' motion is necessary because Defendants Credit Suisse International and Credit Suisse Securities (USA) LLC (collectively, "Defendants" or "Credit Suisse") have taken a series of positions that have forced discovery to a standstill and require this Court's intervention. First, Defendants have objected to six of the sixteen depositions noticed by Plaintiffs on the basis of Fed. R. Civ. P. 30(a)(2)'s presumptive ten deposition limit.[1] At the same time, Defendants have reversed their previous position, as reflected in the stipulation for a 120-day extension of the deadlines in the scheduling order, and now object to any discovery occurring after October 31, 2016, even though the Court specifically allowed the Parties to continue with fact discovery by "mutual consent" until January 23, 2017. *See* ECF No. 124 at 2 (granting stipulation in part).

---

[1]     As Plaintiffs informed Defendants, they are only seeking to conduct a total of sixteen depositions. Plaintiffs anticipate withdrawing one of the two subpoenas of ECD's finance officials.

**NEW YORK**
CONNECTICUT
CALIFORNIA
OHIO
LONDON

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
THE HELMSLEY BUILDING
230 PARK AVENUE, 17th FLOOR
NEW YORK, NY 10169

212-223-6444 VOICE
212 223-6334 FAX
SCOTTLAW@SCOTT-SCOTT.COM
WWW.SCOTT-SCOTT.COM

Defendants' positions create a "Catch 22" situation for Plaintiffs. If the Court will not allow depositions after October 31, 2016, despite its prior ruling, then Plaintiffs need to schedule as many depositions as possible in October. However, Plaintiffs cannot schedule depositions at the moment because Defendants maintain that Plaintiffs are entitled to only four more depositions, not the eleven that have been noticed.

Plaintiffs' ability to schedule depositions has also been hampered by Defendants failure to date to produce documents responsive to Plaintiffs' Third Set of Requests for Production of Documents ("3rd Requests"), which were served on August 16, 2016. These documents, which Defendants acknowledge exist and claim to be searching for, are necessary to the depositions of the remaining Credit Suisse witnesses.

In view of the foregoing, Plaintiffs seek the Court's assistance. Deposition discovery, which has been significantly delayed by Defendants' tardy document productions, should be allowed to proceed until December 31, 2016. Defendants have already stipulated to such an extension and the Court has held that fact discovery may proceed through this date by mutual consent of the Parties. *See* ECF No. 124 at 2. There would be no issue here but for Defendants' attempt to exploit the wording of the Court's order for a tactical advantage.

Further, the Court should grant Plaintiffs leave to take additional depositions. Five of the sixteen depositions sought by Plaintiffs are of witnesses beyond the subpoena power of the Court. These depositions are *de bene esse* depositions that are not subject to Fed. R. Civ. P. 30(a)(2)'s ten-deposition limit. Even if all sixteen of Plaintiffs' depositions are deemed subject to the limit, as explained below, the depositions Plaintiffs seek are not unnecessarily cumulative or duplicative and are necessary to assist Plaintiffs in proving a wide ranging scheme that involved dozens of employees at Credit Suisse and hedge fund investors who took massive, unwarranted short bets against ECD stock. *In re Weatherford Int'l Sec. Litig.*, No. 11 Civ. 1646(LAK)(JCF), 2013 WL 5762923, at *2 (S.D.N.Y. Oct. 24, 2013).

I.   BACKGROUND FACTS

In this securities class action, Plaintiffs assert claims against Defendants for market manipulation and securities fraud in violation of §§9 and 10(b) of the Securities Exchange Act of 1934. Plaintiffs allege that Defendants perpetrated a fraudulent scheme that allowed coordinated, manipulative short bets against ECD common stock that benefitted Credit Suisse and predatory hedge funds at the expense of ECD's public shareholders.

The evidence obtained to date bears out Plaintiffs' allegations. Specifically, the evidence shows that in the Spring of 2008, Defendants recommended that ECD, which was seeking to raise money for a plant expansion, conduct an offering of $316 million in convertible bonds, which are bonds that can be converted into stock at the holders' discretion, and concurrently establish a share lending facility of 3.44 million in ECD stock to be used to facilitate hedging transactions by investors in the convertible bonds.

Defendants, who marketed themselves to ECD as experts with respect to convertible debt offerings accompanied by share lending facilities, were heavily involved in drafting the share lending agreement and other documents that represented to investors that the 3.44 million ECD shares would be used solely to hedge the convertible notes. As presentations prepared by Credit Suisse for ECD evidence, the term "hedge" as used in these documents had a specific meaning:

an investor in one of the convertible notes would only be permitted to take a short position using the borrowed shares to hedge against the equity risk embedded in the notes. This "hedge ratio" was a quantifiable number calculated by Defendants using a standard formula.

But, contrary to their representations to the public and ECD, Defendants used the 3.44 million shares provided to them to let hedge funds who had bought approximately $250 million of the ECD bonds to take synthetic short positions that were far larger than the hedge ratio. These oversized synthetic short positions were arrived at through negotiations between Defendants and the hedge fund investors and allowed these investors to make massive bets against the price of ECD stock that would not have been possible absent Defendants' undisclosed manipulative conduct. Plaintiffs expect to show that Defendants' conduct caused a significant decline in ECD stock, harming the putative class.

## II.     ARGUMENT

### A.     The Court Should Allow the Parties to Take Depositions Until December 31, 2016

Plaintiffs seek a minor modification to the revised scheduling order entered by the Court on August 5, 2016 to allow Plaintiffs a fair opportunity to complete deposition discovery. *See* ECF No. 124 at 2. With Defendants' consent, Plaintiffs previously sought a 120-day extension of the merits discovery cut-off date from August 31, 2016 to December 31, 2016. As explained in the joint stipulation provided to the Court, this extension was needed because several non-parties that had been subpoenaed were still in the process of producing documents and several key depositions that had been scheduled in August had to be rescheduled for September. *See* ECF No. 124; *see also* ECF 127 at 1-2. Although this Court declined to enter the stipulation as submitted by the Parties, the revised scheduling order provides that the Parties may conduct fact discovery until January 23, 2017 by "mutual consent." ECF No. 124 at 2. Now, in the face of Defendants' newly announced position that, notwithstanding their earlier stipulation to a 120-day extension, they will not "consent" to any discovery after October 31, 2016, Plaintiffs ask the Court to modify the scheduling order to allow either Party to take deposition discovery until December 31, 2016 as previously requested. "A trial court enjoys wide discretion in its handling of pre-trial discovery, and may extend or limit discovery deadlines where there is good cause to do so." *Sean Thompson, M.D. v. Jamaica Hosp. Med. Ctr.*, No. 13 Civ. 1896, 2015 WL 7430806, at *3 (S.D.N.Y. Nov. 20, 2015). Here, good cause exists because Plaintiffs have diligently prosecuted this action but have been hindered by Defendants' extremely tardy production of documents. *See* ECF No. 127 at 1-5. Further, Defendants have previously stipulated to a 120-day extension, demonstrating that they will not be prejudiced now by such an extension.

As Plaintiffs have previously advised the Court (see ECF No. 104 at 2), the discovery process was significantly delayed in this case by the fact that Defendants took approximately five months longer than expected to substantially complete their document production in response to Plaintiffs' initial requests. The initial scheduling order submitted by the Parties was predicated on the understanding that Credit Suisse would substantially complete its production of documents responsive to Plaintiffs' First Set of Requests for Production of Documents by the middle of January 2016. *See* Tr. of Nov. 2, 2015, Scheduling Conference at 6:8-16 (explaining that the Parties "had set a schedule based on an estimate from Credit Suisse that they could

hopefully substantially produce the documents in response to [Plaintiffs'] document request by mid-January of 2016. . . . [T]hat is a predicate . . . from plaintiff's view [that] this is a reasonable schedule.") Unfortunately, Defendants were not able to substantially complete their document production in response to Plaintiffs' initial requests until June 10, 2016, approximately five months later than originally predicted. In addition, Defendants' production was heavily "backloaded." Approximately 50% of Defendants' production in response to Plaintiffs' first and second requests for production (served on October 16, 2015 and December 7, 2015, respectively) were produced in June and July.

Further, Defendants' production in response to later propounded discovery requests issued to obtain documents arguably covered by, but not produced in response to, Plaintiffs' initial requests is still incomplete. Specifically, notwithstanding their production of 253,000 pages of documents on October 2, 2016, a volume of documents four times the total number of pages previously produced, Defendants have not completed their production in response to Plaintiffs' 3rd Requests. The slow pace of production prevented Plaintiffs from beginning to notice depositions until June 2016, and Defendants' footdragging in scheduling the deposition of their Rule 30(b)(6) witnesses (*see* ECF No. 127 at 3-4) compounded Plaintiffs' dilemma. Despite these delays, Plaintiffs are in a position to complete deposition discovery within the time period previously stipulated to by Defendants and permitted by this Court in the revised scheduling order.

### B. The Court Should Grant Plaintiffs Leave to Take Sixteen Depositions

#### i. Plaintiffs Only Seek One Deposition Beyond the Ten Discovery Deposition Limit

Five of the six depositions that Plaintiffs seek are trial depositions, also known as *de bene esse* depositions, of witnesses outside the subpoena power of the Court that do not count toward the 10 discovery deposition limit set by Fed. R. Civ. P. 30(a)(2).[2] "The Second Circuit . . . has indicated that *de bene esse* depositions can be taken when a witness is simply outside the subpoena power of the court and cannot be compelled to testify at trial." *E.E.O.C. v. Beauty Enterprises, Inc.*, No. 3:01CV378, 2008 WL 3892203, at *2 (D. Conn. July 9, 2008) (citing *Manley v. Ambase, Inc.*, 337 F.3d 237, 247–48 (2d Cir. 2003)). Such depositions allow a party to develop evidence for trial and are not treated as part of the discovery process to which the Rule 30(a)(2)(A)(i) ten-per-side deposition limit applies. *See, e.g., Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560(RMB)(HBP), 2008 WL 5423316, at *2 (S.D.N.Y. Dec. 31, 2008); *RLS Assocs., LLC v. United Bk. of Kuwait PLC*, No. 01 Civ. 1290(CSH), 2005 WL 578917, at *6 (S.D.N.Y. Mar. 11, 2005).[3]

---

[2] The five deponents beyond the subpoena power of the Court are Mark Morelli (home, Wellesley Hills, MA); Stephen Rabinowitz (home, Savannah, GA); David Dolezal (home, Mill Valley, CA), James Nappo (home, Chicago IL) and one of either Kelly Baker (home, Albuquerque, NM) or Sanjeev Kumar (home, Larkspur, CA).

[3] *See also Rayco Mfg. Inc. v. Deutz Corp.*, No. 5:08 CV 00074, 2010 WL 183866, at *3 (N.D. Ohio Jan. 14, 2010); *Bouygues Telecom, S.A. v. Tekelec, Inc.*, 238 F.R.D. 413 (E.D.N.C. 2006); *see also Burket v. Hyman Lippitt, P.C.*, No. 05-72110, 2008 WL 1741875, at *3 (E.D. Mich. Apr. 11, 2008).

    ii. <u>Even if the Court Finds that All Sixteen Depositions Are Subject to the Limit, Leave Should be Granted</u>

  The sixteen depositions Plaintiffs seek are non-duplicative and necessary to fully uncover the facts with respect to Defendants' wide-ranging scheme. A "court must grant a request to exceed ten depositions unless the additional depositions would be unreasonably cumulative or duplicative, the requesting party had a prior opportunity in discovery to obtain the information sought, or the burden or expense of additional depositions would outweigh any likely benefit." *Weatherford*, 2013 WL 5762923, at \*2. Here Plaintiffs have deposed or seek to depose: (i) Three former ECD officials: the Company's former CEO (Morelli), Board Chairman (Rabinowitz) and one top finance official (Kumar or Kelly). These depositions are necessary to understand Defendants' role in pitching and structuring the Offerings, ECD's understanding of the Offering Documents and the share lending agreement to which ECD was a party, and what, if anything, Defendants told ECD about their use of the 3.44 million borrowed shares; (ii) Six current or former employees of Defendants involved in (a) structuring the Offerings, drafting the Offering Documents and share lending agreement, and pitching the Offerings to ECD; (b) marketing the ECD shares and notes to the hedge funds; or (c) using the borrowed shares, including to establish the short positions that were transferred to the hedge funds via the Total Return Swaps.[4] Plaintiffs also noticed and took a 30(b)(6) witness on behalf of Defendants to address the complex, voluminous trading data produced by Defendants; (iii) David Dolezal, the lead banker from UBS, which was co-lead underwriter on the Offerings; (iv) representatives of four of the forty hedge funds that, based on the data, made large bets against ECD stock as part of the alleged scheme. These depositions are relevant to understanding Defendants' agreement with the hedge funds and why the deal Defendants offered the hedge funds was so attractive; and (v) a representative of a hedge fund that did not buy any notes at all but that was nevertheless permitted to make negative bets against ECD through swaps written by Defendants providing short exposure through the borrowed shares. This deposition is relevant to understanding what appears to be an additional course of misconduct by Defendants, *i.e.*, the use of the borrowed shares to create short positions against ECD not connected in any way to the Offerings.

  Plaintiffs are available at the Court's convenience to discuss the foregoing issues.

           Very truly yours,
           SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

           */s/ Thomas L. Laughlin*

           Thomas L. Laughlin

---

[4] Notably, Plaintiffs are being very conservative in deposing only six employees of Defendants. In response to Plaintiffs' Interrogatories, Defendants identified seventeen current or former employees who worked on the Offerings at issue, and this total did not even include individuals who worked on Defendants' swap desk, which played a critical role in executing the scheme.