**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ECD INVESTOR GROUP, *et al*., | Civil Action No. 1:14-cv-08486 (VM)(SN) |
| Plaintiffs, | |
| v. | **[Submitted to the Court on November 8, 2016, Pursuant to Its Individual Practices]** |
| CREDIT SUISSE INTERNATIONAL, *et al*., | |
| Defendants. | |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ........................................................................................1

II.  FACTUAL BACKGROUND ..........................................................................................2

III. ARGUMENT ...................................................................................................................5

    A.   The Legal Standard for Class Certification ...........................................................5

    B.   The Proposed Classes Satisfy the Requirements of Rule 23(a) ..............................5

        1.   The Members of the Proposed Classes Are so Numerous that
             Joinder of All Members Is Impracticable ......................................................6

        2.   Questions of Law and Fact Common to Members of the Classes
             Exist ................................................................................................................7

        3.   Plaintiffs' Claims Are Typical of the Claims of the Classes ........................8

        4.   The Proposed Class Representatives and the Proposed Class
             Counsel Will Fairly and Adequately Protect the Interests of the
             Classes ..........................................................................................................10

    C.   The Proposed Classes Meet the Requirements of Rule 23(b)(3) ..........................11

        1.   Questions of Law or Fact Common to the Classes Predominate
             over Any Individual Issues ...........................................................................11

          a.   Plaintiffs Are Entitled to Invoke the Presumption of Reliance
             Because Defendants Committed a Fraud on the Market ...........................13

          b.   ECD Common Stock Traded on an Efficient Market ...............................14

             i.   ECD Common Stock Traded at a Large Average Volume...........15

             ii.   A Significant Number of Analysts Followed and Reported
                 on ECD Stock ................................................................................15

             iii.   ECD Common Stock Shares Traded on Nasdaq...........................16

             iv.   ECD Was Eligible to File on SEC Form S-3 During the
                 Proposed Class Periods .................................................................16

             v.   The Price of ECD Common Stock Reacted to New
                 Company-Specific Information During the Proposed Class
                 Periods...........................................................................................16

          c.   Plaintiffs Are Also Presumed to Have Relied on Defendants'
             Omissions Under *Affiliated Ute* ............................................................16

           d.   Plaintiffs Will Establish the Price Impact of Defendants'
             Misconduct Through Common Proof .......................................................18

       2.     A Class Action Is the Superior Method of Adjudicating the Claims Asserted Here ............................................................................................18

   D.    Scott+Scott and Lewis & Roberts Satisfy the Requirements of Rule 23(g)(1) ............................................................................................20

IV.   CONCLUSION............................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972) .................................................................................................16, 17

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .................................................................................................10, 11

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013) ..........................................................................................5, 12, 13

*Anwar v. Fairfield Greenwich Ltd.*,
    306 F.R.D. 134 (S.D.N.Y. 2015) (Marrero, J.) ......................................................2, 3, 17

*Banyai v. Mazur*,
    205 F.R.D. 160 (S.D.N.Y. 2002) ...................................................................................6

*Basic, Inc. v. Levinson*,
    485 U.S. 224 (1988) .....................................................................................................13

*Billhofer v. Flamel Techs., S.A.*,
    281 F.R.D. 150 (S.D.N.Y. 2012) ...................................................................................7

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) ............................................................................15, 16

*Consolidated Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ............................................................................................6

*Dodona I, LLC v. Goldman, Sachs & Co.*,
    296 F.R.D. 261 (S.D.N.Y. 2014) ...........................................................................7, 8, 11, 17

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) .....................................................................................................12

*In re Arakis Energy Corp. Sec. Litig.*,
    No. 95-CV-3431(ARR), 1999 WL 1021819 (E.D.N.Y. Apr. 27, 1999) .......................13

*In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
    281 F.R.D. 134 (S.D.N.Y. 2012) ...................................................................................6

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009) .........................................................................................9, 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  245 F.R.D. 147 (S.D.N.Y. 2007), *vacated in part on other grounds*, 574 F.3d
  29 (2d Cir. 2009).................................................................................................7, 8

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)............................7, 18

*In re Monster Worldwide Sec. Litig.*,
  251 F.R.D. 132 (S.D.N.Y. 2008) ..............................................................................8

*In re NTL, Inc. Sec. Litig.*,
  No. 02 Civ. 3013 LAK AJP, 2006 WL 330113 (S.D.N.Y. Feb. 14, 2006) ...........................13

*In re NYSE Specialists Sec. Litig.*,
  260 F.R.D. 55 (S.D.N.Y. 2009) ..........................................................................6, 9, 18

*In re Sadia, S.A. Sec. Litig.*,
  269 F.R.D. 298 (S.D.N.Y. 2010) .............................................................................8

*In re SLM Corp. Sec. Litig.*,
  No. 08 Civ. 1029 (WHP), 2012 WL 209095 (S.D.N.Y. Jan. 24, 2012) .............................16

*In re Veeco Instruments, Inc. Sec. Litig.*,
  235 F.R.D. 220 (S.D.N.Y. 2006) ............................................................................13

*Gerber v. Computer Assocs. Int'l, Inc.*,
  No. 91 CV 3610 (SJ), 1995 WL 228388 (E.D.N.Y. Apr. 7, 1995) ..................................18

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968)..................................................................................19

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  134 S. Ct. 2398 (2014)....................................................................................13, 14

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)....................................................................................7

*McIntire v. China MediaExpress Holdings, Inc.*,
  38 F. Supp. 3d 415 (S.D.N.Y. 2014)..............................................................5, 7, 8, 14

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002)................................................................................11

*Ret. Sys. of Mississippi v. Merrill Lynch & Co., Inc.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) ...........................................................................7, 10

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)....................................................................................9

*S.E.C. v. Malenfant*,
   784 F. Supp. 141 (S.D.N.Y. 1992)...........................................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)...........................................................................................................9

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
   §78i ......................................................................................................................... *passim*

17 C.F.R.
   §240.10b-5 ..........................................................................................................1, 13

Fedederal Rules of Civil Procedure
   Rule 23 ...................................................................................................................... *passim*

Lead Plaintiffs Johnathan Sharrette (appointed Personal Representative of the Estate of deceased Lead Plaintiff Willard A. Sharrette), David Goldman, and Esta Goldman ("Plaintiffs" or "ECD Investor Group"), by and through their undersigned attorneys, hereby respectfully submit this memorandum of law in support of Plaintiffs' motion for: (i) class certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (ii) appointment of Plaintiffs as Class Representatives; and (iii) appointment of Scott+Scott, Attorneys at Law, LLP ("Scott+Scott") and Lewis & Roberts, PLLC ("Lewis & Roberts") (collectively, "Lead Counsel") as Class Counsel pursuant to Fed. R. Civ. P. 23(g).[1]

## I.   PRELIMINARY STATEMENT

This Action has been brought against Credit Suisse International and Credit Suisse Securities (USA) LLC (collectively, "Defendants" or "Credit Suisse") alleging violations of Sections 9 and 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §§78i & 78j(b)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).  Plaintiffs, on behalf of other similarly situated investors, seek certification of the following Classes:

(a)   A class consisting of all persons who purchased shares of Energy Conversion Devices ("ECD") common stock between June 18, 2008 and December 31, 2010 inclusive (the "Proposed Misrepresentation Class Period"), and who were damaged thereby (the "Proposed Misrepresentation Class"); and

(b)   A class consisting of all persons who held ECD common stock as of the close of the market on June 17, 2008 and sold those shares between June 18, 2008 and December 31, 2010, inclusive (the Proposed Manipulation Class Period), and who were damaged thereby (the "Proposed Manipulation Class").[2]

---

[1]   Plaintiffs contacted Defendants to seek a meet and confer on this motion on October 28, 2016.  Defendants were first available to speak on November 3, 2016 and the Parties satisfied their meet and confer obligation on that date. Defendants intend to oppose this motion.  On November 7, 2016, Defendants provided Plaintiffs with their position with respect to whether certain information designated by them as "confidential" should be filed under seal.

[2]   Excluded from these Classes are Defendants, members of the immediate families of each of the Defendants, any person, firm, trust, corporation, officer, director, or other individual or

As established below, this action easily satisfies the requirements under Rule 23 of the Federal Rules of Civil Procedure for class certification.  Securities cases, such as this one, are ideally suited for class treatment due to the predominance of numerous factual and legal questions, and the "Second Circuit has directed courts to adopt a liberal interpretation of Rule 23 in order to maximize the benefits to private parties and, in cases that involve alleged manipulation of public markets, to maximize the benefits to the public provided by class actions." *Anwar v. Fairfield Greenwich Ltd.*, 306 F.R.D. 134, 140 (S.D.N.Y. 2015) (Marrero, J.).  Further, in light of the number of putative class members and the impracticability of individualized actions, proceeding as a class action is the superior means of fairly and efficiently adjudicating the claims of Class members.  Moreover, Plaintiffs' claims are typical of those of the other Class members, and, through Court-appointed Lead Counsel, Plaintiffs have thus far successfully prosecuted this action.

Accordingly, Plaintiffs respectfully request that the Court certify the Class, appoint Plaintiffs as Class Representatives, and appoint Scott+Scott and Lewis & Roberts as Class Counsel.

## II.   FACTUAL BACKGROUND

ECD was a pioneering manufacturer of solar power technology, specifically, photovoltaic solar laminates that generated clean, renewable energy by converting sunlight into electricity.  ¶22.[3]   ECD's solar laminates had unique characteristics that differentiated them from

---

entity in which any Defendant has a controlling interest, or which is related to or affiliated with any of the Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

[3]   All citations to "¶__" are to paragraphs in the Consolidated Amended Complaint, dated February 3, 2014 (the "Complaint"), which is the operative complaint in this action.  *See* ECF No. 48.

conventional crystaline solar modules, including physical flexibility, light weight, high durability and ease of installation. *Id*. As a solar manufacturer in a capital-intensive industry, in 2008, ECD sought to raise money in order to finance its projected expansion. ¶23.

Credit Suisse offered ECD a financing solution that would allow ECD to raise the necessary capital to fund the Company's expansion. ¶24. Specifically, Credit Suisse, which served as the underwriter for ECD's offering of securities, created an investment structure – a Tandem Offering – in which ECD (i) issued $316 million in notes (the "Convertible Notes"),[4] and 4,714,975 shares of ECD common stock (the "Stock Offering"), which included 3,444,975 ECD shares to be loaned to Credit Suisse at a price of one cent per share pursuant to a share lending agreement (the "Borrow Facility"). ¶¶24, 42. The Share Lending Agreement, which was signed by Credit Suisse, represented that the Borrow Facility shares would be used *"solely for the purpose* of directly or indirectly (y) facilitating the sale and the hedging of the Convertible Notes by the holders thereof." ¶25. Since the price of a note convertible into equity will react to changes in the price of the underlying shares, an investor seeking to hedge a convertible note will short the number of shares necessary to protect against the downside risk to the notes created by a decline in the equity price of the underlying stock, thereby creating a market neutral position. ¶¶4, 26. The appropriate number of shares necessary to do this is called the "Hedge Ratio." *Id*.[5]

---

[4]     Each note was convertible into 10.892 ECD shares. At that conversion rate, a holder of the Convertible Note would be paying $91.80 for each share of ECD stock. ¶24.

[5]     ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████



See Laughlin Decl., Ex. A. Based on the offering price of $72 for the shares sold in the Stock Offering,

[6]

Rather than operating the Borrow Facility solely to allow "hedging" as had been represented to investors and as it had agreed to do, however, Credit Suisse used the borrowed shares to permit the hedge funds that purchased the Convertible Notes to make far larger negative, directional bets against ECD than was necessary for any legitimate hedging strategy.

¶28.

[7] This constituted a significant, coordinated, negative directional bet against ECD common stock. *See* Laughlin Decl., Ex. D (Deposition Transcript of Tobias Schraven) at 89:16-91:22, 92:11-94:20.

---

[6]     For example, if an investor purchased a single ECD convertible note in the Offering convertible into 10.892 ECD shares, she would need to short 8.49 shares of ECD stock (10.892 x .78) to establish a neutral hedge. *See id.*, ¶36.

[7]     Rather than physically lending the ECD shares to the hedge funds, Credit Suisse provided this short exposure through Total Return Swaps.  Credit Suisse borrowed all 3,444,975 shares available under the share lending facility on or about the date of the Offerings and sold these shares into the market.  As a result, Credit Suisse was short the 3,444,975 shares because it had an obligation to return them to ECD.  Credit Suisse then transferred this short position to the hedge funds through Total Return Swaps.  *See* Parties' Joint Letter, dated Oct. 30, 2015, ECF No. 91.

As Plaintiffs' expert Dr. Matthew Ringgenberg explains in his declaration, Plaintiffs expect to demonstrate that Credit Suisse's scheme to misuse the share lending facility had a profound negative effect on ECD's share price.  By substantially increasing the supply of ECD shares in the market, Defendants drove down the price of ECD stock, harming all members of the Class.  *See* Ringgenberg Decl. ¶¶9-22.

## III.   ARGUMENT

### A.   The Legal Standard for Class Certification

To be certified, a putative class must demonstrate that it satisfies "all four of the requirements of Rule 23(a) and one of the categories of Rule 23(b)."  *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 422 (S.D.N.Y. 2014) (Marrero, J.).  In determining whether a class should be certified, the question is not whether plaintiffs will prevail on the merits, but rather, whether the requirements of Rule 23 have been met.  *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.").  As demonstrated below, both the Proposed Misrepresentation Class and Proposed Manipulation Class satisfy all of the prerequisites of Rule 23(a) as well as the requirements of Rule 23(b)(3).  Accordingly, class certification is warranted.[8]

### B.   The Proposed Classes Satisfy the Requirements of Rule 23(a)

Each of Rule 23(a)'s requirements are met here: (i) the members of the Classes are so numerous that joinder of all members is impracticable; (ii) there are questions of law or fact common to the Classes; (iii) the claims or defenses of the representative parties are typical of

---

[8]   Plaintiffs allege misrepresentation claims and market manipulation claims under Sections 9 and 10 of the Exchange Act. ECF No. 82 at 24.

those asserted by the absent Class Members; and (iv) Plaintiffs will adequately protect the interests of the Classes.

> **1.     The Members of the Proposed Classes Are so Numerous that Joinder of All Members Is Impracticable**

Rule 23(a) permits class certification if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002).  Numerosity "is presumed when a class consists of forty members or more."  *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 70 (S.D.N.Y. 2009).  "In securities fraud class actions relating to publicly owned and nationally listed corporations, 'the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.'"  *In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 138 (S.D.N.Y. 2012).[9]

Numerosity cannot be disputed here with respect to either the Proposed Misrepresentation Class or the Proposed Manipulation Class.  As of June 30, 2008, the start of the proposed Class Periods, ECD had over 40.5 million common shares outstanding, and that number increased to 49.8 million by the end of the proposed Class Periods.  *See* Declaration of Tara Stephenson ("Stephenson Decl."), Ex. G.  Average weekly trading volume ranged from roughly 750,000 to 10 million shares of ECD common stock during the proposed class periods and, thus, it can reasonably be inferred, damaged or affected ECD shares were owned by hundreds, if not thousands, of persons.  *See id.*, Ex. C.  Thus, the number of Class Members significantly surpasses the Second Circuit's 40-member numerosity threshold.  *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

---

[9]     Internal citations are omitted and emphasis is added unless otherwise specified.

## 2.   Questions of Law and Fact Common to Members of the Classes Exist

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The "commonality" requirement of Rule 23(a)(2) "is generally considered a low hurdle easily surmounted."  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *9 (S.D.N.Y. Dec. 23, 2009).  It is met where "plaintiffs' grievances share a common question of law or of fact."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  "Commonality does not mandate that all class members make identical claims and arguments."  *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012).  Rather, it requires plaintiffs simply to "identify some unifying thread among the members' claims that warrants class treatment."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 158 (S.D.N.Y. 2007), *vacated in part on other grounds*, 574 F.3d 29 (2d Cir. 2009).  Thus, "[e]ven a single common question of law or fact may suffice to satisfy the commonality requirement."  *Pub. Emps.' Ret. Sys. of Mississippi v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011).  This Court has held that "[w]here plaintiffs allege that class members have been injured by similar material misrepresentations and omissions, the Commonality Requirement is satisfied."  *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 267 (S.D.N.Y. 2014); *accord McIntire*, 38 F. Supp. 3d at 424.

Here, the claims of all members of the Proposed Misrepresentation Class arise out of the same material misrepresentations and omissions made by Defendants during the Class Period – specifically, that the share lending facility would be used ***"solely for the purpose*** of directly or indirectly (y) facilitating the sale and the hedging of the Convertible Notes by the holders thereof."  ¶25.  Further, as in other securities cases, common issues of law and fact are extensive, including:

    a.      whether Defendants acted with the requisite scienter;

    b.      whether Defendants' violations caused Plaintiffs' losses; and

    c.      the proper measure of damages.

¶52.  Courts have found commonality satisfied in similar circumstances.  *See*, *e.g.*, *In re Flag Telecom Holdings*, 245 F.R.D. at 158 (observing that "courts have consistently found substantially similar allegations to be sufficient" to satisfy commonality requirement); *In re Monster Worldwide Sec. Litig.*, 251 F.R.D. 132, 133-34 (S.D.N.Y. 2008) (certifying 10(b) class with similar set of common issues); *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 309 (S.D.N.Y. 2010).[10]

For the same reasons, there are common issues with respect to the Proposed Manipulation Class.  Plaintiffs' claims arise under Sections 9(a)(2) (15 U.S.C. §§78i(a)(2)).  *See* ECF No. 82 at 26.  Plaintiffs' Section 9(a)(2) market manipulation claim raises a multitude of common issues as well, including:

    a.      whether Defendants' securities transactions depressed the price of ECD stock; and

    b.      whether Defendants engaged in these transactions with scienter.

*See* ECF No. 82 at 29.[11]

### 3.    Plaintiffs' Claims Are Typical of the Claims of the Classes

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The Typicality Requirement is satisfied when each class member's claim arises from the same course of events and each class

---

[10]    As this Court has observed, a Section 9(a)(4) misrepresentation claim "closely parallels" a Section 10(b) claim.  ECF No. 82 at 31.

[11]    Similarly, a claim of market manipulation under Section 10(b) requires a plaintiff to allege (1) manipulative acts; (2) damage; (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; and (6) furthered by the defendant's use of the mails or any facility of a national securities exchange.  ECF No. 82 at 27.

member makes similar legal arguments to prove the defendant's liability." *McIntire*, 38 F. Supp. 3d at 424.  "The Typicality Requirement is 'not demanding.'" *Dodona*, 296 F.R.D. at 267 (quoting *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 208 (S.D.N.Y. 2012)).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  The "commonality and typicality requirements of Rule 23(a) tend to merge."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011).  Thus, if commonality is established, typicality is established as well.

Plaintiffs here satisfy the typicality requirement because Plaintiffs' theories of liability all "arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *NYSE Specialists*, 260 F.R.D. at 70 (quoting *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)).  Plaintiffs allege that Defendants violated Sections 9 and 10(b) of the Exchange Act by issuing public statements that misled investors and by engaging in a series of securities transactions that manipulated the price of ECD stock.  ¶¶55-65.  Indeed, the federal court presiding over this case prior to transfer found that the claims of the ECD Investor Group are typical of the claims of the putative Class Members.  *See* Order appointing lead structure (ECF No. 43) at 5 ("Here, members of the ECD Investor Group have suffered the same injury as the putative class members from the same course of conduct; namely, financial loss from Credit Suisse's alleged fraudulent scheme.").  Plaintiffs assert the same claims and make the same legal and factual arguments as the Proposed Classes.  The liability, causation and damages elements of the claims against Defendants will succeed or fail on the same factual and legal theories for Plaintiffs and the Class.  For these reasons, the

9

typicality requirement is plainly satisfied.  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574

F.3d 29, 35 (2d Cir. 2009).

### 4.    The Proposed Class Representatives and the Proposed Class Counsel Will Fairly and Adequately Protect the Interests of the Classes

Under Rule 23(a)(4), Plaintiffs must "fairly and adequately protect the interests of the

class." Fed. R. Civ. P. 23(a)(4).  "Adequacy 'entails inquiry as to whether: 1) plaintiff's interests

are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are

qualified, experienced and able to conduct the litigation.'"  *In re Flag Telecom*, 574 F.3d at 35.

"The focus is on uncovering 'conflicts of interest between named parties and the class they seek

to represent.'"  *Id*.  However, "[i]n order to defeat a motion for certification, [] the conflict 'must

be fundamental.'"  *Id*.  Furthermore, "[a] finding that a proposed class representative satisfies the

typicality inquiry constitutes 'strong evidence that [its] interests are not antagonistic to those of

the class; the same strategies that will vindicate plaintiff['s] claims will vindicate those of the

class.'"  *Public Employees*, 277 F.R.D. at 109.

Plaintiffs satisfy the adequacy requirement largely for the same reasons that they satisfy

the typicality requirement.[12]  Plaintiffs' claims are the same as those of the Classes and, as a

result, their interests are directly aligned, and in no way in conflict, with those of the Class.  *See*

Order appointing lead structure at 5 ("Here, there is nothing in the record indicating that any

member of the ECD Investor Group or its retained counsel has a conflict of interest with any

putative class member. . . .   The ECD Investor Group's interests in prosecuting this action are

---

[12]    As the Supreme Court has noted, "[t]he adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'  The adequacy heading also factors in competency and conflicts of class counsel." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-58 & n.13 (1982)).

identical to those of the putative class members."). Each Lead Plaintiff has purchased ECD Common stock during the proposed Class Periods and was injured thereby. *See* Laughlin Decl., Exs. H, I, J, K, L, M; *see also* ¶¶10-12.

In addition, Plaintiffs have already successfully represented the interests of the proposed Classes and demonstrated their adequacy in serving as Class Representatives. They have actively participated in this litigation by supervising and monitoring the progress of the litigation by, among other things, reviewing pleadings, receiving status updates from counsel, and communicating with counsel regarding significant case developments, and will continue to actively participate in its prosecution should they be appointed Class Representatives. *See* Laughlin Decl., Ex. H (Deposition Transcript of David Goldman) at 61:5-61:23; Laughlin Decl., Ex. I (Deposition Transcript of Esta Goldman) at 24:24-25:21. Each Plaintiff has produced documents in this case. Additionally, all of the Plaintiffs are scheduled for depositions or have already had their depositions taken (*see id*. Exs H, I, J).

### C.     The Proposed Classes Meet the Requirements of Rule 23(b)(3)

In addition to meeting the requirements of Rule 23(a), the present action also satisfies Rule 23(b)(3), which requires a finding that "'questions of law or fact common to class members predominate over any questions affecting only individual members' . . . , and 'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Dodona*, 296 F.R.D. at 269 (quoting Fed. R. Civ. P. 23(b)(3)).

### 1.     Questions of Law or Fact Common to the Classes Predominate over Any Individual Issues

The predominance inquiry "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class

member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); s*ee also Dodona*, 296 F.R.D. at 269.  The Supreme Court has held that issues such as whether or not a defendant knowingly and/or recklessly made public material misstatements and/or omissions (*i.e.*, scienter, falsity and materiality), and whether the revelation(s) of the alleged fraud proximately caused that company's stock price to decline (*i.e.*, loss causation), involve common questions of law and fact that predominate over individualized ones.  *See Amgen*, 133 S. Ct. at 1196-97, 1200; *Erica P. John Fund, Inc. v. Halliburton Co. ("Halliburton I")*, 563 U.S. 804, 812 (2011).  "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *See Amgen*, 133 S. Ct. at 1196 ("Rule 23(b)(3), however, does ***not*** require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.'") (bold emphasis added).

To recover damages in a private securities fraud action under Section 10(b) of the Exchange Act, a plaintiff must prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Id.*, at 1191-92 (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011)).  Additionally, to recover damages under Section 9(a)(2) of the Exchange Act, a plaintiff must show: "(1) a series of transactions in a security creating actual or apparent trading in that security or raising or depressing the price of that security, (2) carried out with scienter and (3) for the purpose of inducing the security's sale or purchase by others . . . ." *S.E.C. v. Malenfant*, 784 F. Supp. 141, 144 (S.D.N.Y. 1992).

All Proposed Misrepresentation Class Members must prove that the misleading statements and omissions were material to investors and were made by Defendants with the requisite state of mind, in connection with the sale of ECD common stock, and caused economic loss.   Similarly, Proposed Manipulation Class Members will have to offer similar proof with respect to their misrepresentation claim and, with respect to their manipulation claim, will have to prove that Defendants engaged with the requisite scienter in transactions that lowered the price of ECD stock.   Proving these elements requires common evidence for all Class Members, and involves issues that necessarily predominate over any individual issues of an individual plaintiff. Indeed, courts within the Second Circuit have agreed that where securities class actions allege violations "carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues."   *In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431(ARR), 1999 WL 1021819, at *10 (E.D.N.Y. Apr. 27, 1999); *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006) (holding common questions of law and fact predominate in securities class actions, and "[a]ny individual issues will necessarily be secondary."); *In re NTL, Inc. Sec. Litig.*, No. 02 Civ. 3013 LAK AJP, 2006 WL 330113, at *12 (S.D.N.Y. Feb. 14, 2006) (predominance satisfied by allegations of misstatements made "to the market as a whole").

### a.      Plaintiffs Are Entitled to Invoke the Presumption of Reliance Because Defendants Committed a Fraud on the Market

Reliance is an element of a claim under Section 10(b) and Section 9(a)(4).[13]   Whether the Class relied on the misleading statements is also a common question that predominates over individual reliance issues.   In a securities fraud class action, plaintiffs are entitled to invoke a rebuttable presumption of reliance, rather than proving direct reliance.   *See Basic, Inc. v.*

---

[13]      Reliance is not an element of Plaintiffs' Section 9(a)(2) claim.

*Levinson*, 485 U.S. 224, 241 (1988); *Halliburton Co. v. Erica P. John Fund, Inc. ("Halliburton II")*, 134 S. Ct. 2398, 2405, 2408 (2014); *Amgen*, 133 S. Ct. at 1192.  The fraud-on-the-market presumption of class-wide reliance "holds that 'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations,'" and that whenever an "investor buys or sells stock at the market price, his 'reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action.'"  *Halliburton II*, 134 S. Ct. at 2408 (quoting *Basic*, 485 U.S. at 246-47).  Further, in order to invoke the fraud-on-the-market theory at class certification, a plaintiff must show that: (1) the alleged misrepresentations were publicly known (2) the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed or the risk that was concealed materialized; and (3) the stock traded in an efficient market.  *Halliburton II*, 134 S. Ct. at 2408.[14]

Defendants' actionable statements were publicly filed with the Securities and Exchange Commission.  *See supra* Section II.  Also, Lead Plaintiffs, like the Class Members, purchased ECD common stock during the Class Periods.  *See* Laughlin Decl., Exs. K, L, M.

### b.    ECD Common Stock Traded on an Efficient Market

The ECD common stock actively traded on the Nasdaq, a highly efficient and automated market.  *See* Stephenson Decl., ¶19.  Courts generally consider the following non-exhaustive list of factors when evaluating an efficiently traded security:

> "(1) [A] large weekly trading volume; (2) the existence of a significant number of analyst reports; (3) the existence of market makers and arbitrageurs in the security; (4) the eligibility of the company to file an S-3 registration statement; and (5) a history of immediate movement of stock price caused by unexpected corporate events or financial releases."

---

[14]    *Halliburton II* also allows a defendant to attempt to rebut the presumption with evidence that the misrepresentation or its correction did not affect the price of the stock.  *Id.*

*McIntire*, 38 F. Supp. 3d at 431 (citing *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989)).

Here, all of the above factors are met, and ECD common stock traded in an efficient market during the Proposed Class Periods.   As set forth in the Stephenson Declaration, Stephenson analyzed the market for ECD common stock and under the *Cammer* factors and concluded that the market for ECD common stock was efficient during the Proposed Class Periods.  *See* Stephenson Decl., ¶47.

### i.     ECD Common Stock Traded at a Large Average Volume

During the Proposed Class Periods, ECD common stock traded on the Nasdaq.  *See id.*, ¶3.  Between 750 thousand and 10 million shares of ECD common stock were traded weekly during the Proposed Class Period and, on average, about 8.1% of the outstanding ECD common stock traded per week during the Class Period.   *Id.*, ¶13 and Ex. C.   The *Cammer* court concluded that weekly trading volume of 2% or more permits a very strong presumption of an efficient market.  *Cammer*, 713 F. Supp. at 1293.  The trading volume of ECD common stock relative to the outstanding ECD common stock supports a finding that the shares traded in an efficient market during the Class Periods.

### ii.     A Significant Number of Analysts Followed and Reported on ECD Stock

At least 26 different securities analysts published numerous analysts' reports on ECD common stock during the Proposed Class Periods.  Stephenson Decl., ¶16.  The presence of a substantial number of analysts indicates that ECD common stock was closely reviewed by investment professionals, who made recommendations to client investors based on information

publicly available about ECD common stock.  *See Cammer*, 711 F. Supp. at 1286.  Thus, the extensive analyst coverage supports a finding of efficiency.

### iii.    ECD Common Stock Shares Traded on Nasdaq

At all pertinent times, ECD common stock traded on the Nasdaq, which is one of the most liquid and efficient forums for trading stocks in the world.  *See* Stephenson Decl., ¶¶18-19.  As a result, market efficiency is commonly presumed for securities traded on the Nasdaq.  *See id*.

### iv.    ECD Was Eligible to File on SEC Form S-3 During the Proposed Class Periods

The Company was eligible to and did file an SEC registration statement on Form S-3.  Stephenson Decl., ¶¶20-23.  This is further evidence of efficiency.

### v.    The Price of ECD Common Stock Reacted to New Company-Specific Information During the Proposed Class Periods

The percentage of days on which unexpected corporate news occurred and ECD's stock price generated abnormal returns occurred 5 times more frequently relative to non-news days, indicating ECD's stock prices immediately reflected corporate news.  Stephenson Decl., ¶32.  Given that ECD's stock price returns indicate its stock price reflected and reacted to unexpected corporate events during the Class Period in a statistically significant manner, this factor supports market efficiency as defined by the *Cammer* opinion.  *See id*.  Accordingly, the fraud-on-the-market presumption has been properly invoked and issues concerning reliance will be common to the Proposed Classes.

### c.    Plaintiffs Are Also Presumed to Have Relied on Defendants' Omissions Under *Affiliated Ute*

The Proposed Classes are also entitled to a presumption of reliance under a wholly independent and equally viable principle.  The *Affiliated Ute* doctrine provides that, if a defendant has a duty to disclose a material fact to investors, defendants' omission of such fact

creates a rebuttable presumption that the investors relied on such omission.  *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972); *In re SLM Corp. Sec. Litig.*, No. 08 Civ. 1029 (WHP), 2012 WL 209095, at *4 (S.D.N.Y. Jan. 24, 2012) (courts presume reliance "when a defendant fail[s] to disclose material information that it was oblig[ated] to share"). Under this theory, as this Court has recently held, "plaintiffs should only have to prove that 'a reasonable investor might have considered the omitted facts important in the making of [their] investment decision.'"  *Anwar*, 306 F.R.D. at 146 (citing *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 186 (S.D.N.Y. 2005)).

The *Affiliated Ute* presumption applies to this case because the core of Plaintiffs' complaint is the manipulative conduct engaged in by Defendants.  "The theory behind *Affiliated Ute* presumption . . . is not undermined simply because a defendant makes misstatements  at the same time it omits material information.'"  *Anwar*, 306 F.R.D. at 146.  Rather, courts in this District have taken a "'flexible and practical approach' that considers  whether a case 'primarily involv[es] omissions where reliance would be difficult to prove because [p]laintiffs' claim is based on a negative."  *Id.* at 146-47.  Moreover, "where plaintiffs' claims are based on a combination of omissions and misstatements, courts in this Circuit have acknowledged the applicability of the *Affiliated Ute* presumption."  *Dodona*, 296 F.R.D. at 269-70.  Here, Plaintiffs have alleged that Defendants engaged in a series of undisclosed actions that caused excess ECD shares to enter the market, allowed hedge funds to take unwarranted short bets against ECD and set in motion market forces that significantly lowered the price of ECD stock.  ¶¶28, 45.  In light of these highly material omissions, the *Affiliated Ute* presumption is warranted.  *See Dodona*, 296 F.R.D. at 270 (plaintiffs were entitled to the *Affiliated Ute* presumption of reliance based on allegations that defendant investment bank failed to disclose to the market its own heavy

negative bet against the worth of the securities and its anticipation of the securities' rapid deterioration).

### d. Plaintiffs Will Establish the Price Impact of Defendants' Misconduct Through Common Proof

As described by Professor Ringgenberg, Plaintiffs expect to demonstrate that Credit Suisse's scheme to misuse the share lending facility had a profound negative effect on ECD's share price. By substantially increasing the supply of ECD shares in the market, Defendants drove down the price of ECD stock. *See generally* Ringgenberg Decl. Since ECD was a publicly traded stock, the price impact caused by Defendants' conduct will affect all Class Members in a uniform way. Further, a common methodology exists for quantifying class members' damages. *Id.*

### 2. A Class Action Is the Superior Method of Adjudicating the Claims Asserted Here

"Securities cases easily satisfy the superiority requirement of Rule 23." *NYSE Specialists*, 260 F.R.D. at 80. Rule 23(b)(3) sets forth the following factors to be considered in making a superiority determination: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

In this litigation, the interest of members of the Class in individually controlling the prosecution of separate actions is minimal because the costs and expenses of individual actions, when weighed against the individual recoveries potentially obtainable, would be prohibitive. "To force each [ ] shareholder to litigate separately would be unfair to each of them, as well as to

Defendants [and] would risk disparate results . . . and be an inefficient use of judicial resources." *Gerber v. Computer Assocs. Int'l, Inc.*, No. 91 CV 3610 (SJ), 1995 WL 228388, at *4 (E.D.N.Y. Apr. 7, 1995); *see also In re Marsh & McLennan Cos.*, 2009 WL 5178546, at *11 ("Superiority is readily found where, as here, 'the alternatives [to a class action] are either no recourse for thousands of stockholders . . . or a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake.'"). Thus, the first superiority factor is satisfied.

Plaintiffs do not envision that any significant difficulties will likely be encountered in managing this case as a class action. This action is appropriate for class treatment, embodying all of the hallmarks, both in form and in substance, of the types of securities actions that are routinely certified in this Circuit and elsewhere. Moreover, it is unquestionable that the parties (and this Court) have an interest in this litigation proceeding in a single forum. By doing so, inconsistent rulings will be avoided, promoting the fair and efficient use of the judicial system.

Finally, this case presents no unusual difficulties in the management of the action. Lead Plaintiff's counsel has handled numerous similar actions, and the appropriate procedures and techniques for the management of such suits are well established. Furthermore, the flexibility provided to the Court under Rule 23 will enable it to address and resolve any management difficulties if they should arise. *See* Fed. R. Civ. P. 23(c), 23(d). Thus, as the Second Circuit has recognized, a class action is superior to other available methods for the fair and efficient adjudication of a controversy affecting a large number of securities holders injured by violations of the federal securities laws. *Green v. Wolf Corp.*, 406 F.2d 291, 296 (2d Cir. 1968).

### D.        Scott+Scott and Lewis & Roberts Satisfy the Requirements of Rule 23(g)(1)

Rule 23(g)(1) provides that "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). Plaintiffs respectfully request that the law firms Scott+Scott and Lewis & Roberts be appointed Class Counsel. For the reasons stated above in connection with the adequacy requirement of Rule 23(a)(4), and consistent with their earlier appointment as counsel for Plaintiffs (ECF No. 43) at 7, the law firms retained by Lead Plaintiffs are well equipped to vigorously represent the Proposed Classes and have substantial experience in class actions and federal securities law. *See* Laughlin Decl., Exs. N, O. They have shown their commitment to the case through hundreds of hours of time and their willingness to retain experts and advance all costs of the litigation. The Court should accordingly appoint Scott+Scott and Lewis & Roberts as counsel for the Proposed Classes.

## IV.        CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court: (i) certify this action pursuant to Rules 23(a) and (b)(3) of the Federal Rules; (ii) appoint the Lead Plaintiffs as Class Representatives; and (iii) appoint Scott+Scott and Lewis & Roberts as Class Counsel pursuant to Rule 23(g)(1).

DATED:  November 16, 2016                **SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**

*/s/ Thomas L. Laughlin IV*
Deborah Clark-Weintraub
Thomas L. Laughlin IV
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
Email: dweintraub@scott-scott.com
        tlaughlin@scott-scott.com

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
Andrea Farah
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile:  (860) 537-4432
Email: afarah@scott-scott.com

LEWIS & ROBERTS, PLLC
Gary V. Mauney
One Southpark Center
6060 Piedmont Row Drive South, Suite 140
Charlotte, NC 28287
Telephone: (704) 347-8990
Facsimile:  (704) 347-8929
Email: garymauney@lewis-roberts.com

LEWIS & ROBERTS, PLLC
James A. Roberts III
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Telephone (919) 981-0191
Facsimile (919) 981-0199
Email: jar@lewis-roberts.com

*Counsel for Lead Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 16, 2016.

*/s/ Thomas L. Laughlin IV*
THOMAS L. LAUGHLIN IV