**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ECD INVESTOR GROUP, et al., | Civil Action No. 1:14-cv-08486 (VM)(SN) |
| Plaintiffs, | |
| v. | **Originally submitted to** |
| | **Court on June 9, 2017** |
| CREDIT SUISSE INTERNATIONAL, et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE
THE DECLARATIONS OF DEBORAH BURSTEIN, TOBIAS SCHRAVEN, AND
TUCKER MARTIN OFFERED IN SUPPORT OF DEFENDANTS' MOTION FOR
<u>SUMMARY JUDGMENT AND OPPOSING CLASS CERTIFICATION</u>**

## <u>TABLE OF CONTENTS</u>

ARGUMENT .................................................................................................................. 3

I.  THE BURSTEIN DECLARATION IS SUBJECT TO AUTOMATIC EXCLUSION ..... 3

    A.    Legal Standard ................................................................................................. 3

    B.    Without Justification, Credit Suisse Failed to Disclose Burstein as a Fact
          Witness, Causing Plaintiffs Substantial Prejudice .................................. 4

II.  THE BURSTEIN DECLARATION IS NOT BASED ON PERSONAL
    KNOWLEDGE .......................................................................................................... 7

    A.    Legal Standard ................................................................................................. 7

    B.    Burstein's Declaration Does Not Meet the Personal Knowledge
          Requirement ................................................................................................... 7

III.  MARTIN AND SCHRAVEN DECLARATIONS SHOULD BE STRICKEN ................ 8

    A.    Legal Standard ................................................................................................. 8

    B.    Martin Declaration Fails to Meet the Personal Knowledge Requirement
          and Directly Contradicts His Own Prior Testimony ................................. 9

    C.    Schraven Declaration Fails to Meet the Personal Knowledge Requirement
          and Directly Contradicts His Own Prior Testimony ............................... 11

CONCLUSION ............................................................................................................ 11

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

CASES

*Atkins v. County of Orange*,
   372 F. Supp. 2d 377 (S.D.N.Y. 2005)..................................................................4, 5

*Bank of China, New York Branch v. NBM LLC*,
   359 F.3d 171 (2d Cir. 2004)............................................................................9, 11

*Buttry v.. General Signal Corp.*,
   68 F.3d 1488 (2d Cir.1995)...................................................................................9

*Cent. Sports, Inc. v. Yamaha Motor Corp., U.S.A.*,
   477 F. Supp. 2d 503 (D. Conn. 2007)...................................................................8

*Design Strategies, Inc. v. Davis*,
   367 F. Supp. 2d 630 (S.D.N.Y. 2005)................................................................4, 5

*Hogan v. Vandewater*,
   7:11-CV-0754(DNH/ATB), 2016 WL 7634430 (N.D.N.Y. April 27, 2006).........4

*Hollander v. Am. Cyanamid Co.*,
   172 F.3d 192 (2d Cir. 1999)..................................................................................7

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*,
   117 F. Supp. 3d 276, 295 (S.D.N.Y. 2015)..........................................................9

*Perkins v. Meml. Sloane-Kettering Cancer Ctr.*,
   02 CIV. 6493 (RJH), 2005 WL 2453078 (S.D.N.Y. Sept. 30, 2005).....................9

*Raskin v. Wyatt Co.*,
   125 F.3d 55 (2d Cir.1997).....................................................................................8

*Russo v. Estee Lauder Corp.*,
   856 F. Supp. 2d 437 (E.D.N.Y. 2012) ..................................................................7

*Spector v. Experian Info. Services Inc.*,
   321 F. Supp. 2d 348 (D. Conn. 2004)...................................................................8

*Union Ins. Soc'y of Canton, Ltd. v. William. Gluckin & Co.*,
   353 F.2d 946 (2d Cir. 1965)..................................................................................7

**STATUTES, RULES & REGULATIONS**

Federal Rules of Civil Procedure
    Fed. R. Civ. P. 26(a)(1)(A) ...................................................................................2, 3, 4
    Fed. R. Civ. P. 30(b)(6) .........................................................................................2, 4
    Fed. R. Civ. P. 37 ......................................................................................................1
    Fed. R. Civ. P. 37(c)(1) .........................................................................................2, 4
    Fed. R. Civ. P. 37(c)(1)'s ..........................................................................................2
    Fed. R. Civ. P. 56 ......................................................................................................1
    Fed. R. Civ. P. 56(c)(4) ...................................................................................2, 3, 7, 8

Federal Rules of Evidence
    Fed. R. Evid. 701 ..............................................................................................3, 9, 11
    Fed. R. Evid. 702 ...................................................................................................9, 11

S.D.N.Y. Local Civil Rules
    Local Civil Rule 56.1 ................................................................................................1

**OTHER AUTHORITIES**

*Wright & Miller*, 8A Fed. Prac. & Proc. Civ. §2053 (3d ed.)....................................3, 4

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") and Rules 56 and 37 of the Federal Rules of Civil Procedure, Plaintiffs Jonathan Sharrette (appointed Personal Representative of the Estate of deceased Lead Plaintiff Willard A. Sharrette), David Goldman, and Esta Goldman (collectively, "Plaintiffs"), respectfully submit this Memorandum of Law in support of their Motion to Strike.

## INTRODUCTION

On March 28, 2017, Defendants filed their Motion for Summary Judgment.  Among the supporting documents is the Declaration of Deborah Burstein in support thereof (ECF No. 158-116) (the "Burstein Declaration").  *See* Ex. 99, (Burstein Declaration).[1]  Via the Burstein Declaration, Credit Suisse makes a completely new factual claim that is unsupported and contrary to the evidence.  The Court may not properly consider the Burstein Declaration.

Deborah Burstein is member of Credit Suisse's general counsel's office who has not been identified as a witness in this case and who attended the fact depositions of Credit Suisse witnesses in this case.  In her Declaration, Burstein states that document Bates Number CS-ECD0000001 ("CS1"), a lengthy spreadsheet containing trading data in ECD securities that was prepared by Credit Suisse, contains "purchase" through Credit Suisse and "every subsequent sale" of ECD stock.  *Id*., ¶3.  Therefore, according to Burstein, CS1 reflects all "subsequent sales" by its clients that were originally effectuated through Credit Suisse.  *Id.*

The Burstein Declaration must be disregarded pursuant to Federal Rules of Civil Procedure 26(a)(1)(A) and 37(c)(1) because Defendants never disclosed Burstein as a fact

---

[1]     All exhibit references are to the exhibits attached to the Declaration of Deborah Clark Weintraub filed in support of Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment and in Further Support of Plaintiffs' Motion for Class Certification filed concurrently.

witness despite having an obligation to make such a disclosure under Fed. R. Civ. P. 26(a)(1)(A). Therefore, under Fed. R. Civ. P. 37(c)(1)'s "automatic exclusion" provision, Credit Suisse cannot use Burstein "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Here, Credit Suisse has offered no justification for failing to disclose Burstein, and the submission of a new witness who will testify to new facts five months after the close of fact discovery on October 30, 2016 is clearly not harmless.  Due to Credit Suisse's failure to properly disclose Burstein, Plaintiffs have not had an opportunity to test her dubious and vague factual assertions in discovery, to seek Ms. Burstein's documents or communications with respect to the claims in her declaration, or to have Plaintiffs' experts consider Ms. Burstein's statements in forming their opinions.  Defendants' belated proffer of Burstein as a witness with respect to the meaning of the CS1 data is all the more egregious given that they produced two Rule 30(b)(6) witnesses on these issues.

Exclusion is also appropriate because the Burstein Declaration is not based on the affiant's personal knowledge as expressly required under the Fed. R. Civ. R. 56(c)(4).  The declaration fails to state that it is based on personal knowledge and there is nothing in it explaining how Ms. Burstein, an attorney, knows the content of CS1 or the meaning of the trading data contained therein.  Ms. Burstein, presumably, is not a fact witness with respect to Credit Suisse's back office operations, trading, and/or prime brokerage functions during the relevant period.  Indeed, the Burstein Declaration does not even state that Ms. Burstein was an employee of Credit Suisse in 2008.

The Court should also strike portions of the Schraven and Martin Declarations (ECF Nos. 158-33 and 158-34, respectively) ("Schraven Decl." and "Martin Decl.," respectively), two largely identical Declarations from Credit Suisse bankers, because they are not based on the

affiants' personal knowledge, as required by Fed. R. Civ. P. 56(c)(4), and as such, fail to establish that the affiants are competent to testify on the matters stated in the Declarations. Additionally, portions of the Schraven and Martin Declarations should be stricken because they directly contradict their own prior sworn deposition testimony. Finally, portions of the Schraven and Martin Declarations should be stricken because they are opinion testimony by a lay person that, in violation of Federal Rule of Evidence 701, are based on technical expertise.

Accordingly, the Court should grant Plaintiffs' motion to strike in full.

## ARGUMENT

## I.   THE BURSTEIN DECLARATION IS SUBJECT TO AUTOMATIC EXCLUSION

### A.   Legal Standard

Fed. R. Civ. P. 26(a)(1)(A) imposes a mandatory requirement that a party disclose any fact witnesses that "the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A); *Wright & Miller*, 8A Fed. Prac. & Proc. Civ. §2053 (3d ed.) ("Initial disclosure was an innovation introduced in 1993 . . . in 2000 a revised version became mandatory nationwide")

> When a party has not provided disclosure as required by Rule 26(a)(1), Rule 37(c)(1) directs courts to deny use of the information by the party that failed to provide the disclosure. That rule is explicit in saying that a party who fails to disclose a witness or document as required by Rule 26(a)(1), or to provide information on a witness or documents in supplemental disclosures required by Rule 26(e)(1), not be allowed to use such evidence at trial unless the failure is substantially justified or harmless. The Committee Note describes this as an "automatic sanction [that] provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence."

*Wright & Miller*, 8A Fed. Prac. & Proc. Civ. §2053 (3d ed.); *Hogan v. Vandewater*, 7:11-CV-0754 (DNH/ATB), 2016 WL 7634430, at *4 (N.D.N.Y. April 27, 2006) ("Rule 37(c)(1) is 'self-executing', and the exclusion of undisclosed information is automatic unless the non-disclosing

party sustains its burden of showing that the failure to disclose was either substantially justified or harmless.") (citing *Atkins v. County of Orange*, 372 F. Supp. 2d 377, 395 (S.D.N.Y. 2005));[2] *Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630, 634 (S.D.N.Y. 2005).

### B.    Without Justification, Credit Suisse Failed to Disclose Burstein as a Fact Witness, Causing Plaintiffs Substantial Prejudice

Credit Suisse never disclosed Burstein as a fact witness.  Ms. Burstein was not designated in Defendants' Initial Disclosures as an individual "likely to have discoverable information" as required by Fed. R. Civ. P. 26(a)(1)(A).  *See* Ex. 99 at 2.  Moreover, prior to March 28, 2017, Credit Suisse had never indicated that Burstein – who is an in-house counsel assigned by Credit Suisse to this case – had relevant factual information.  Credit Suisse's glaring violation of Fed. R. Civ. P. 26(a)(1)(A) is particularly egregious because Plaintiffs dedicated much of their Fed. R. Civ. P. 30(b)(6) deposition of Credit Suisse to the contents of CS1, the subject of Ms. Burstein's declaration.  *See* Ex. 98 (Plaintiffs' Corrected Amended Notice of Rule 30(b)(6) Depositions at 4-6) (listing deposition topics related to content of CS1).  Not only was Ms. Burstein not designated as Credit Suisse's representative on these matters, her name never even came up as someone who would have factual information.  In short, Credit Suisse's attempt to interject factual testimony from Ms. Burstein on March 28, 2017, five months after the discovery deadline of October 31, 2016, amounts to a complete 'sandbagging,' which is exactly what Fed. R. Civ. P. 37(c)(1) was designed to prohibit.  *Hogan*, 2016 WL 7634430, at *3 ("The purpose of the rule is to prevent the practice of "sandbagging" an opposing party with new evidence.").

Credit Suisse carries the burden of coming forward with a "substantial justification" for its violation of the federal rules, yet, it has offered no explanation whatsoever.  *Atkins*, 372 F.

---

[2]    Unless otherwise noted, all citations are omitted and emphasis is added.

Supp. 2d at 396 ("the non-disclosing party has the burden to demonstrate that the failure to disclose was substantially justified or that the failure was harmless").

Credit Suisse similarly bears the burden of showing that its failure was "harmless." *Id.* However, Credit Suisse has failed to make such an argument and its failure is obviously not harmless. To the contrary, by submitting Ms. Burstein's declaration months after the close of discovery, Credit Suisse has prejudiced Plaintiffs by making a contested factual claim and simultaneously depriving Plaintiffs of the means to scrutinize that claim. Plaintiffs were not put on notice that they should seek Ms. Burstein's documents or testimony. Nor were Plaintiffs' experts given the opportunity to consider Ms. Burstein's testimony in forming their opinions. Accordingly, exclusion is required. *See, e.g.*, *Design*, 367 F. Supp. 2d at 635 ("Defendants would thus be harmed if the Court were to permit Design to pursue a lost profits theory of damages, in that Defendants would be required either to postpone a trial for which they are otherwise prepared and which has already been significantly delayed, or proceed without having had the opportunity to conduct adequate discovery on this issue. Therefore, the Court finds that permitting Design to advance a lost profits theory of damages in this case would not be harmless.").

The harm to Plaintiffs is particularly egregious because Ms. Burstein's claim that CS1 reflects its hedge fund clients' sales irrespective of whether they were executed through CSSU does not appear to be correct. With respect to the 599,129 shares bought by hedge funds that seem to be the focus of Ms. Burstein's declaration, Credit Suisse banker Tobias Schraven testified that Credit Suisse did not contractually limit the hedge funds' ability to sell the shares and that Credit Suisse did not track or monitor the shares. Ex. 14 (Schraven Tr. 102:7-10 (Q: "[W]ere the [hedge fund investors] contractually obligated to hold on to those 600,000 shares?"

A: "Not contractually."), 103:16-104:2 (testifying that hedge fund investors were not contractually obligated to adjust their hedge position after June 18, 2008 as the price of ECD common stock was declining), 103:8-15 (testifying that nobody at Credit Suisse tracked or monitored the amount of shares hedge investors purchased)).

Similarly, the testimony of Credit Suisse' own expert witness – Dr. Jones – conflicts with Ms. Burstein's statement. Dr. Jones relied on CS1 and Schraven's testimony in forming his opinions. Dr. Jones testified on January 23, 2017 that he did not know what happened with the 599,129 shares and it was possible the hedge funds sold them on "day two," which is inconsistent with Ms. Burstein's assertion that CS1 reflects all transactions in the 599,129 shares:[3]

> Q.  Was there any constraints on the hedge funds selling the 599,000 shares?
> A.  Not to my knowledge.
> Q.  So as far as you know they could have sold them day two?
> A.  **So I don't know one way or the other what they did after day one**.  All I know is what is in testimony about what happened on day one.
> * * *
> Q.  You agree that Credit Suisse had no means of tracking what happened to those 599,000 shares?
> Mr. Clark:     Objection, calls for speculation.
> A.  I don't know of any arrangements that they had.

Ex. 39 (Jones Tr. at 137:19-138:5, 138:21-139:3) (emphasis added).

Ms. Burstein's statement is also inconsistent with common sense because ECD stock could be sold through many markets makers, not just Credit Suisse. Ms. Burstein's statement is also inconsistent with the limited hedge fund trading data received by Plaintiffs. For example, as Dr. Jones records in his report, "between June 18, 2008 and June 1, 2009, Highbridge Capital

---

[3]     There is significant ambiguity to what Ms. Burstein is actually saying in her declaration and she does not refer to the 599,129 shares, though her declaration is used to support Credit Suisse's argument on this subject. Plaintiffs have not had the opportunity to depose Ms. Burstein or explore the contours of her knowledge on this issue.

actively traded ECD stock . . . and directly sold short over one million ECD shares in the open

market." Ex. 53 (Jones Rebuttal Report, dated December 27, 2016, ¶33). Yet CS1 does not

reflect these stock sales by Highbridge.

## II. THE BURSTEIN DECLARATION IS NOT BASED ON PERSONAL KNOWLEDGE

### A. Legal Standard

Federal Rule of Civil Procedure 56(c)(4) mandates that an affidavit or a declaration filed

to support a summary judgment motion "must be made on personal knowledge, set out facts that

would be admissible in evidence, and show that the affiant or declarant is competent to testify on

the matters stated" therein. Fed. R. Civ. P. 56(c)(4). Where, as here, a declaration contains

material that does not comply with Rule 56(c)(4), the Court must disregard it. *Union Ins. Soc'y*

*of Canton, Ltd. v. William. Gluckin & Co*., 353 F.2d 946, 952 (2d Cir. 1965) ("statements not

made on personal knowledge do not comply with the requirement of Fed. R. Civ. P. 56[(c)(4)]

and may not be considered [on a motion for summary judgment]"). It is also appropriate to

strike such declarations from the record. *Russo v. Estee Lauder Corp.*, 856 F. Supp. 2d 437, 443

(E.D.N.Y. 2012); *Hollander v. Am. Cyanamid Co.,* 172 F.3d 192, 198 (2d Cir. 1999) ("A court

may . . . strike portions of an affidavit that are not based upon the affiant's personal knowledge,

contain inadmissible hearsay or make generalized and conclusory statements.").

### B. Burstein's Declaration Does Not Meet the Personal Knowledge Requirement

In violation of Fed. R. Civ. P. 56(c)(4), Ms. Burstein does not claim to have personal

knowledge of the matters set forth in her Declaration. *See generally*, Ex.99. Other than stating

her title being the "Director and Counsel" at Credit Suisse, Burstein offers no evidence that

would allow the Court to ascertain the basis for her personal knowledge. *Id.* Ms. Burstein does

not explain how her responsibilities as a Director and Counsel render her sufficiently familiar

with CS1's contents or Credit Suisse's back office operations or trading practices; what sources she counseled in forming her opinion as to its content; nor what method she used to confirm that the CS1 spreadsheet, which "was pulled from a data archive in India," Ex. 15 (Martin Tr. 18:19-21) and which spans over 170,000 lines and over 40 columns contains "each and every transaction." *See* Ex. 99, ¶¶2,3. Ms. Burstein further fails to state what her employment position was in 2008 and whether she was even employed by Credit Suisse. In light of these numerous deficiencies, Ms. Burstein's declaration is not "adequate evidence." *Cent. Sports, Inc. v. Yamaha Motor Corp., U.S.A.*, 477 F. Supp. 2d 503, 512 (D. Conn. 2007). Because the case law squarely puts the burden on the moving party to establish the admissibility of evidence relied on in connection with summary judgment (Fed. R. Civ. P. Advisory Notes 2010), the Burstein Declaration should be stricken or disregarded. *Spector v. Experian Info. Services Inc.*, 321 F. Supp. 2d 348, 352 (D. Conn. 2004) (citing *Raskin v. Wyatt Co*., 125 F.3d 55, 66 (2d Cir.1997)) ("The principles concerning admissibility of evidence do not change on a motion for summary judgment.).

## III.   MARTIN AND SCHRAVEN DECLARATIONS SHOULD BE STRICKEN

### A.   Legal Standard

As noted above, Federal Rule of Civil Procedure 56(c)(4) mandates that an affidavit or a declaration filed to support a summary judgment motion "must be made on personal knowledge." *See supra* at 7-8.

Additionally, a court may strike declarations made in support of summary judgment if the declaration directly and unequivocally contradicts previous deposition testimony. *See, e.g.*, *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 117 F. Supp. 3d 276, 295 (S.D.N.Y. 2015). The Second Circuit has held that "'a party's affidavit which contradicts his own prior

deposition testimony should be disregarded on a motion for summary judgment.'" *Perkins v. Meml. Sloane-Kettering Cancer Ctr.,* 02 CIV. 6493 (RJH), 2005 WL 2453078, at \*15 (S.D.N.Y. Sept. 30, 2005) (striking portions of affidavit contradicting deposition testimony). (citing *Buttry v.. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir.1995)).

Finally, under Federal Rule of Evidence 701, a court may not admit lay expert testimony that is "based on scientific, technical, or other specialized knowledge within the scope" of Federal Rule of Evidence 702.  *Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 182 (2d Cir. 2004) (district court erred in admitting lay testimony on matters regarding "typical" bank practices or "definitions of bank terms.").

**B.     Martin Declaration Fails to Meet the Personal Knowledge Requirement and Directly Contradicts His Own Prior Testimony**

Paragraphs 33-36 and 37-43 of the Martin Declaration must be stricken because they are not based on his personal knowledge as established by Martin's own testimony.  As Martin admitted, his involvement with the facts of this case was limited to the "pitching, structuring, and execution of the ***convertible notes portion of the Offering***" only.  *See* Ex. 101 (Martin Decl.) at 1.  During his deposition, Martin confirmed that his knowledge does not extend to events that took place after the offering or beyond the notes themselves.  For example, when asked whether he had "any further involvement [after] the offering," Martin testified: "I didn't. . . . [O]thers would have been closer to this transaction in sort of ongoing maintenance." Ex. 15 (Martin Tr. at 67:3-9).  When asked whether he was involved in receiving the orders for swaps, Martin stated "I was not."  *Id.* (Martin Tr. 68:22-5; 92:25-93:10 (Q: "[I]s there any way to differentiate between transactions on CS 1 in which Credit Suisse was a market maker versus transactions that are [related] to swaps?" A: "I would refer you to Tony Bertoldo.")).  Given his lack of involvement, Martin has no personal knowledge about what Credit Suisse did with the borrowed shares in the

9

months and years after the offerings, which is the subject of paragraphs 37-43.  Similarly, Martin has no basis to attest to how Credit Suisse viewed ECD as a client, which is the subject of paragraphs 33-36.

Similarly, when asked about Credit Suisse's sale of the double print shares, Martin reiterated his previous testimony that he "was no longer involved" at that time.  Ex. 15 (Martin Tr. at 76:10-17, 76:19-23 (Q: "Do you have any basis for your understanding that the 720 K [double print shares] were not resold after the double print?" A: "No."), 80:10-15 (Q: "[A]re there any transactions after the double print reflecting a sale of any of the 720,000 shares by Credit Suisse into the market?" A: "There may be, I can't speak to that."), 89:6-9 (Q: "Do you know the account number for [the 720,000 shares]?" A: "I don't.")).  Nevertheless, via the Martin Declaration, Martin inexplicably offers his opinion on Credit Suisse's treatment of the double print shares: "In my opinion, the fact that Credit Suisse chose not to sell short the remaining 721,765 shares of ECD common stock is contrary to any allegations that Credit Suisse attempted to negatively impact the ECD stock price."[4]  Martin Decl., ¶41

Paragraphs 3-10 and 19-20 should be stricken as inappropriate lay testimony that relies on Martin's technical knowledge as an investment banker.  *Bank of China*, 359 F.3d at 182.  These paragraphs relate to the meaning of "hedging" in general and is the subject of expert opinion from the parties.  *See* Ex. 53 (Jones Report, ¶¶21-26); *See* Ex. 46 (Calamos Textbook) at 6; Ex. 35 (DeRosa Report, ¶¶40-51).  Accordingly, these paragraphs of Martin's declaration

---

[4]     Paragraph 47 should be stricken because it is a legal conclusion and paragraph 48 should be stricken because it is not based on personal knowledge.  Paragraph 26 should be stricken to the extent it pertains to Credit Suisse's legal obligations under the Share Lending Agreement.

should be stricken because they are based on his general technical knowledge and not his perceptions in this case. *Bank of China*, 359 F.3d at 182; Federal Rule of Evidence 701.[5]

> ### C. Schraven Declaration Fails to Meet the Personal Knowledge Requirement and Directly Contradicts His Own Prior Testimony

Paragraphs 37-43 of the Schraven's Declaration should be stricken because Schraven testified that he had no responsibility for the borrowed shares after the offerings. Ex. 14 (Schraven Tr. at 96:1-20). Schraven also testified that he was not responsible for ensuring that the borrowed shares were used in a manner consistent with the share lending agreement. *Id.* (Schraven Tr. at 102:21-103:7). Given this testimony, Schraven has no personal knowledge about what Credit Suisse did with the borrowed shares in the months and years after the offerings, which is the subject of paragraphs 37-43.

Paragraphs 3-10, 19-20 and 49 of the Schraven Declaration should stricken because they are inappropriate opinion testimony as described above with respect to the Martin Declaration. *See supra* at 10.[6]

## CONCLUSION

For the reasons set for the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion to strike.

Dated: June 23, 2017                 Respectfully submitted,
                                     SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

                                     By: */s/ Deborah Clark-Weintraub*
                                     Deborah Clark-Weintraub
                                     Thomas L. Laughlin IV

---

[5]     Neither the Martin Declaration nor the Schraven Declaration can be admitted under Federal Rule of Evidence 702 as expert testimony because Credit Suisse did not timely disclose Martin as an expert and there has been no discovery as to his expert opinions. *See id.*

[6]     Additionally, Paragraph 47 should be stricken because it is a legal conclusion and paragraph 48 should be stricken because it is not based on personal knowledge. Paragraph 26 should be stricken to the extent it pertains to Credit Suisse's legal obligations under the Share Lending Agreement.

Andrea Farah
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY  10169
Tel:  (212) 223-6444
Fax:   (212) 223-6334
Email: dweintraub@scott-scott.com
       tlaughlin@scott-scott.com
       afarah@scott-scott.com

LEWIS & ROBERTS, PLLC
Gary V. Mauney
James A. Roberts III
One Southpark Center
6060 Piedmont Row Drive South, Suite 140
Charlotte, NC 28287
Tel: (704) 347-8990
Fax: (704) 347-8929
Email: garymauney@lewis-roberts.com
      JimRoberts@lewis-roberts.com

*Counsel for Lead Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 23, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Executed this 23th day of June, 2017, at New York, New York.


<u>*/s/ Deborah Clark-Weintraub*</u>
Deborah Clark-Weintraub

13